## FREEZE v. SMITH.

1. CORPORATIONS—SYNDICATES—"SECURITIES"—BLUE SKY LAW.
   Units issued by syndicate organized to purchase real estate and
   which represent an equitable interest in property are "securi-
   ties" within the meaning of the blue sky law (2 Comp. Laws
   1929, § 9769 *et seq.*), requiring approval by the securities com-
   mission.

2. SAME—AGENT CHARGEABLE WITH NOTICE.
   One agreeing in writing to act as trustee for syndicate or-
   ganized to purchase real estate, units of which are to be sold
   to the public, is chargeable with knowledge as to whether
   provisions of blue sky law have been complied with relative
   to sale of such securities.

3. SAME—AGENT PARTICIPATING IN UNAUTHORIZED SALE LIABLE.
   Trustee of syndicate organized to purchase real estate, who told
   prospective purchaser of unit therein that he had authorized
   salesmen making sale to accept money therefor, was acting as
   agent of the syndicate, and thus participated in making the
   sale, rendering him liable for violation of the statute (2 Comp.
   Laws 1929, § 9788) whether he profited thereby or not.

4. SAME—STATUTES—APPLICABILITY.
   Language "pre-organization certificate or pre-organization sub-
   scription," as used in 2 Comp. Laws 1929, § 9770, subd. (c),
   has no application to units offered for sale by syndicate or-
   ganized to purchase real estate.

5. SAME—TENDER—SUFFICIENCY.
   In action to recover purchase price of unit sold by syndicate or-
   ganized to purchase real estate in violation of blue sky law,
   tender back of what plaintiffs had received, made in court
   after action was brought, was sufficient under the statute (2
   Comp. Laws 1929, § 9788).

Error to Wayne; Dingeman (Harry J.), J. Sub-
mitted April 15, 1931. (Docket No. 96, Calendar No.
35,315.) Decided June 1, 1931. Rehearing denied
September 10, 1931.

Validity and interpretation of "blue sky laws," see annotation
in 15 A. L. R. 262; 24 A. L. R. 523; 27 A. L. R. 1169; 30 A. L. R.
1331; 40 A. L. R. 1014; 54 A. L. R. 498; 57 A. L. R. 1004.

Assumpsit by Earl P. Freeze and another against T. Allan Smith and others to recover the price paid for a unit in a syndicate formed to deal in real estate sold in violation of the blue sky law. Judgment for defendants in justice's court. Plaintiffs appealed to circuit court. Judgment for defendants. Plaintiffs bring error. Reversed, and judgment ordered entered for plaintiffs.

*Leithauser, Brown, Lenehan & O'Donnell,* for plaintiffs.

*David I. Hubar* and *Cyril Bevan* (*Milton M. Maddin,* of counsel), for defendant Smith.

SHARPE, J. In the fall of 1926 the Sunrise Park Syndicate was formed for the purpose of purchasing certain real estate in Oakland county and subdividing and selling the same. Forty-two interests, called units, were represented in the purchase, the holder of each unit paying therefor the sum of $500.

At the solicitation of the defendant John J. Andrews and A. R. Fraser, the plaintiffs purchased one of these units. Before doing so, they called the defendant Smith, whom they well knew, on the telephone, and were informed by him that he was to act as trustee for the syndicate, and that Andrews and Fraser were authorized to accept the money on their purchase. They turned over to them certain stocks, concededly of the value of $500, and received a receipt, signed by Smith, acknowledging the payment of $500—

"for one unit of interest in the SUNRISE PARK SYNDICATE a syndicate formed for the purpose of purchasing and selling a certain parcel of land situated in Royal Oak township, Oakland county, in accordance

with the terms of agreement as set forth in a certain agreement to form aforesaid syndicate and other correlated matters.''

At the same time they signed a copy of the agreement referred to in the receipt, which reads, in part, as follows:

''We, the undersigned, being the unit holders of the syndicate known as the SUNRISE PARK SYNDICATE which syndicate was formed for the purpose of acquiring the following described property: (here follows a description of the property.)

''WHEREAS the said syndicate is divided into forty-two units, each unit representing an investment of $500.

''Now THEREFORE, it is agreed that each unit shall represent a one forty-second interest in the above described property and shall share equally in all profits derived in the said property.

''We, and each of us, in consideration of others having subscribed to this syndicate do hereby agree and do hereby appoint and constitute T. ALLAN SMITH of Detroit, Michigan, as trustee for the said syndicate for the purpose as hereinafter set forth.''

It then provided that the trustee should receive all moneys paid in by the members of the syndicate; that it was understood that the purchase price of the property was to be $90,000, of which $21,000 ($500 paid by each of the 42 unit holders) should be paid in cash, and the balance in annual payments specifically stated therein.

It was further provided that if the entire amount of $21,000 was not paid to the trustee on or before November 21, 1927, each unit holder should be entitled to a return of the money paid by him, and that the trustee should be guided in the handling of the property by a majority vote of the units cast at

meetings provided for therein, and it was made the duty of the trustee to enter into such contracts as directed at any such meeting. Following the signatures to the agreement was an acceptance of the trust, signed by Mr. Smith.

At the same time the plaintiffs executed a power of attorney, which, after reciting that they were the owners—

"of a 1/42 undivided interest in the property known as the Sunrise Park Syndicate, which syndicate is purchasing land contract in the following described property,"—

describing it, and that Smith had been "designated trustee for the benefit of all unit owners in the said syndicate," appointed him their attorney-in-fact to purchase the property; to "execute a sales agreement for the sale of the foregoing property with C. J. Lingman Company;" to sell and convey their interest therein, and to disburse the moneys received by him therefor.

It is conceded that the units issued under the trust agreement had not been "accepted for filing" by the Michigan securities commission, and the question here presented is whether they were "securities" within the meaning of that term as used in Act No. 220, Pub. Acts 1923, as amended by Act No. 136, Pub. Acts 1929 (2 Comp. Laws 1929, § 9769 *et seq.*), known as the blue sky law. The title to the act reads, in part, as follows:

"An act to prevent fraud, deception and imposition in the issuance, sale or disposition of stocks, bonds and other securities sold or offered for sale within the State of Michigan, and for such purpose to create a commission to regulate and supervise the issuance, sale and disposition of such securities."

Subsection (c) of section 9770, as amended in 1929, reads as follows:

"The term 'security' or 'securities' shall include any note, stock, treasury stock, bond, debenture, evidence of indebtedness, pre-organization certificate or pre-organization subscription, transferable certificate of interest or participation, certificate of interest in a profit-sharing agreement, certificate of interest in an oil, gas, or mining lease, collateral trust certificate, any transferable share, investment contract, or beneficial interest in or title to property or profits, or any other instrument commonly known as security."

The words "pre-organization certificate or pre-organization subscription" were inserted therein by the amendment.

The purpose of the act is clearly expressed in its title. It is also provided in section 3 thereof:

"The provisions of this act shall be liberally construed to the end that the purposes thereof may be accomplished by preventing fraud, deception and imposition on purchasers of securities."

The purpose of forming such a syndicate to acquire property would seem to be to avoid the necessity of incorporation. In a corporation the interests of those who invest in it are represented by certificates of stock. In this syndicate, such interests are represented by the instruments above referred to, from which it appears that the plaintiffs have an equitable interest in property. The act provides that a certificate of stock, transferable certificate of interest or participation, certificate of interest in a profit-sharing agreement, or any transferable share, investment contract, or beneficial interest in or title to property or profits shall be deemed a security and subject to its provisions.

We are impressed that if it be given the liberal construction intended by the legislature, and in fact provided for therein, as above quoted, it should be held that the sale of these units is within its terms. That which the plaintiffs have received, and now hold, is a duplicate of the trust agreement in which their rights are set forth as above stated. It is transferable by assignment. The purpose was not to convey to the plaintiffs an undivided interest in land. It 'may well be called a transferable share in an "investment contract" or, with greater certainty, a "beneficial interest in or title to property or profits."

The question here presented is a new one in this State. An association organized under the common law, having a declaration of trust in favor of the association for the benefit of purchasers of its stock, was held to be an investment company within the meaning of the act. *People* v. *Clum,* 213 Mich. 651 (15 A. L. R. 253).

In *State* v. *Gopher Tire & Rubber Co.,* 146 Minn. 52, 56 (177 N. W. 937, 938), it was said:

"The placing of capital or laying out of money in a way intended to secure income or profit from its employment is an investment as that word is commonly used and understood."

In *State* v. *Ogden,* 154 Minn. 425, 427 (191 N. W. 916, 917), it was said:

"The arrangement was legitimate, so far as appears, and convenient enough. The paternalistic purpose of the statute is to prevent offering to the public, not land contracts, but investment contracts, evidencing a right to participate in the proceeds of a venture, without the commission first ascertaining whether there is behind the venture something so

tangible that a sound policy of regulation permits exposing the investing public to them.''

Many authorities, while not directly in point, which shed light upon the construction which should be given to this section of the act, are collected and commented on in 15 A. L. R. 262; 24 A. L. R. 523; 27 A. L. R. 1169; 40 A. L. R. 1014, and 54 A. L. R. 498.

Section 20 of the original act reads as follows:

''Every sale or contract for sale of any security, not accepted for filing under this act or made contrary to any order of the commission, shall be voidable at the election of the purchaser, and the person making such-sale or contract for sale, and every agent of or for such seller who shall have participated or aided in any way in making such sale, knowing such sale to be in violation of this act, shall be jointly and severally liable to such purchaser, upon tender to the seller or in court of the securities sold or of the contract made, for the full amount paid by such purchaser, together with all taxable court costs, in any action brought under this section.''

The requirement as to knowledge was eliminated from this section by the 1929 amendment (2 Comp. Laws 1929, § 9788). The plaintiffs purchased this unit from the syndicate. The sale to them was made by the defendant John J. Andrews and A. R. Fraser. The latter is not a party hereto. William J. Andrews was made a party defendant. It does not appear that he had anything to do with the matter. Neither of these defendants was served with process. It is insisted that no liability on account of the sale attached to the defendant Smith; that he was not an agent of the seller, participating or aiding in any

way in making the sale, and had no knowledge that such sale was made in violation of the act.

The plaintiff Earl P. Freeze testified, as before stated, that he called the defendant Smith on the telephone, and, when asked to relate the conversation, said:

"Well, I just told Mr. Smith that these men were here and they told me that he was acting as trustee, and of course if he knew the men. He went ahead and said he authorized them to accept the money and told me he did and he knew the men. I turned the stock over to them and since that time I have never received any report or any information in connection with this syndicate. We called the trustee in person and over the 'phone and he said there was nothing to report."

At the time of this sale, if not before, Mr. Smith had agreed in writing to act as the trustee for the syndicate. Before doing so, it was his duty to ascertain whether the promoters had complied with the provisions of the act relative to the sale of such securities. He must be charged with knowledge of the fact that they had not. When he told Mr. Freeze that he had authorized Andrews and Fraser to accept the money from them on such sale, and when he afterwards accepted this money, he was acting as an agent of the syndicate. It is apparent that what he said to Freeze influenced him and his wife in making the purchase. He had joined with the promoters in the carrying out of an enterprise contrary to the terms of the statute, and in what he then said to Freeze he aided and participated in making the sale. It makes no difference whether he profited thereby or not. *Thompson* v. *Cain,* 226 Mich. 609; *Lewis* v. *Bricker,* 235 Mich. 656.

Defendants' counsel insist that the legislature, by inserting the words "pre-organization certificate or pre-organization subscription" in subsection (c) in 1929, evidenced its understanding that such securities were not theretofore included therein, and that the purchase made by plaintiffs falls within these terms. In our opinion this language is not applicable to the proceedings here taken resulting in the sale made to the plaintiffs.

It is urged that no tender of that which the plaintiffs received was made before suit brought. Section 20 of the act, above quoted, expressly provides that such tender may be made "in court," and this was done.

The judgment entered will be reversed and set aside, with costs, and the cause remanded with directions to the trial court to enter a judgment for plaintiffs for the sum of $500. As the action was first brought in the justice's court, no interest will be allowed.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.