WARDOWSKI v. GUARDIAN TRUST CO. OF DETROIT.

1. CORPORATIONS—TRUSTS—CONTRACTS—ULTRA VIRES—VENDOR AND PURCHASER.

Mistake of trust company in executing contract for purchase of land in its corporate capacity when it intended to purchase as trustee does not render said contract *ultra vires*.

2. SAME—EXTENT OF CORPORATE POWER—NOTICE—STATUTES.

Extent of corporate power of trust company, being found in public law, trust company and those dealing with it must be held cognizant of its provisions with reference to whether particular transaction is *ultra vires*.

3. TRUSTS—CORPORATIONS—MISTAKE—VENDOR AND PURCHASER.

Trust agreement between trust company and members of syndicate for whom it acted in executing land contract as vendee created valid trust as between them, although by mistake said contract was executed by it in its corporate capacity, and trust agreement was not executed until after execution of said contract by vendors.

4. CORPORATIONS—TRUSTS—FORECLOSURE—DEFENSE OF ULTRA VIRES —STATUTES.

If contract to purchase land, executed by trust company in its corporate capacity when it intended to purchase as trustee, is *ultra vires*, said defense may not be made in suit by vendors to foreclose said contract (Act No. 327, Pub. Acts 1931).

5. SAME—DEFENSE OF ULTRA VIRES NOT VESTED RIGHT.

Defense that contract executed by corporation is *ultra vires* is not vested right, and therefore legislature had right to take it away (Act No. 327, Pub. Acts 1931).

6. SAME—PUBLIC POLICY.

Doctrine of *ultra vires* is intended to keep private corporations within their fixed powers, and State may, by statute, say when corporation may or may not plead its violation in release of contracts otherwise legitimate (Act No. 327, Pub. Acts 1931).

7. SAME—PLEADING.

Defense of *ultra vires*, to be available, must be pleaded.

8. SAME—WHEN DEFENSE OF ULTRA VIRES PERMISSIBLE.

Generally, defense of *ultra vires* should not be permitted to prevail when it will not advance justice, but only when imperative rule of public policy requires it.

9. REFORMATION OF INSTRUMENTS—LAND CONTRACTS—MUTUAL MISTAKE—TRUSTS—CORPORATIONS.

Mistake of trust company in executing contract for purchase of land in its corporate capacity when it intended to purchase as trustee, not being mutual, reformation of contract to release it from obligation thereunder may not be had.

10. Vendor and Purchaser—Foreclosure—Trusts—Privity of
    Contract—Deficiency Decree.
    Where trust company in its corporate capacity executed con-
    tract for purchase of land, and also executed trust agreement
    with members of syndicate for whom it acted, there was no
    privity of contract between vendors and members of syndi-
    cate, and therefore no deficiency decree may be had against
    them in suit to foreclose contract, although they may be held
    to respond to trust company.

11. Licenses—Syndicates—Blue Sky Law—Joint Adventures.
    It is not violation of blue sky law for several persons to join
    and furnish, proportionately, parts of purchase price of real
    property to be held for their benefit by trustee, but sales of
    units in such syndicate, after organization, may not be made
    without compliance with said law.

12. Vendor and Purchaser—Foreclosure—Joint Adventures—
    Default—Liability of Defaulting Member.
    Member of syndicate executing trust agreement with trust com-
    pany purchasing land on contract for benefit of said syndicate
    members was not discharged from liability thereunder by his
    default in making payment, in absence of action by syndicate
    members terminating his contract relations.

Appeal from Wayne; Lamb (Fred S.), J., presid-
ing. Submitted November 3, 1932. (Docket No.
174, Calendar No. 36,845.) Decided April 4, 1933.

Bill by Louis Wardowski and another against
Guardian Trust Company of Detroit (now Union
Guardian Trust Company), a Michigan corporation,
and others to foreclose a land contract. Cross-bill
by defendant trust company against plaintiff for
reformation of the contract and against Wormer
& Moore, a Michigan corporation, and others to de-
termine rights and liabilities under a trust agree-
ment respecting the vendee's interest in the land con-
tract. Cross-bill by defendant James Vernor, Jr.,
to determine rights and liabilities under the above-
mentioned instruments. From decree for plaintiffs

against defendant trust company and for defendant trust company against certain cross-defendants, defendant trust company and certain cross-defendants appeal.    Affirmed.

*Frank A. Martin* and *Shapero & Shapero* (*Alex. J. Groesbeck,* of counsel), for plaintiffs.

*Bulkley, Ledyard, Dickinson & Wright* (*Selden S. Dickinson, Robert W. Conder,* and *Hal H. Smith,* of counsel), for defendant trust company.

*Corliss, Leete & Moody* (*Thomas T. Leete, Jr., Paul B. Moody,* and *Alexander P. Leete,* of counsel), for defendant James Vernor, Jr.

*Miller, Canfield, Paddock & Stone,* for defendant George W. Trendle.

*Younglove & Chockley,* for defendant Frederick M. Montefiore.

*Monaghan, Crowley, Reilley & Kellogg* (*Edward T. Kelley,* of counsel), for defendant Charles R. Murphy.

WIEST, J.    This is a suit to foreclose a land contract, executed by plaintiffs as vendors and the Guardian Trust Company, trustee, as vendee, in which the vendee's interest therein and obligation thereunder has been assumed by the Union Guardian Trust Company, by merger of the Guardian Trust Company and the Union Trust Company under that name.    Decree passed for plaintiffs, adjudging the sum of $115,934.25 due, and granting the trust company remedy against "syndicate members," hereinafter mentioned, for deficiency liability.    The trust company denies liability of the Guardian Trust Company in its corporate capacity because the land

contract was executed by the Guardian Trust Company, as trustee, and plaintiffs were advised of the trust and the capacity in which the vendee acted by a copy of the trust agreement attached to the land contract at the time of its execution and delivery to plaintiffs, and contends that to hold it liable in its corporate capacity renders the contract one beyond its corporate powers, and, therefore, *ultra vires*. Plaintiffs insist upon the letter of the contract. The letter of the contract holds the vendee in its corporate capacity if the contract was not *ultra vires*.

The defendants Wormer & Moore, a corporation, Kenneth Moore Land Company, a corporation, Charles R. Murphy, Adolph Finsterwald, James Vernor, Jr., Frederick M. Montefiore, George W. Trendle, Lucien S. Moore, Jr., and Harold F. Wardwell, desired to purchase the property described in the land contract, and for that purpose executed a so-called syndicate agreement, under which the subscribers were to pay for specified interests in a set-up price for the land and have the title taken in the name of the Guardian Trust Company, as trustee, under a trust agreement. November 6, 1928, plaintiffs signed the land contract and gave it to the Guardian Trust Company for execution. November 20, 1928, the trust agreement between the syndicate members and the Guardian Trust Company was signed. The agreement recited that the Guardian Trust Company had entered into a land contract for the purchase of the premises. The trust company declared therein that it held all interest in the land contract in trust for the syndicate members, and the agreement defined the purpose. Thereupon the Guardian Trust Company executed the land contract, and attached thereto a copy of the trust agreement.

The trust company had an undoubted right to contract for the property in a trust capacity. It claims that it did so, and to hold it liable in its corporate capacity would render the contract *ultra vires.* It is manifest that the trust company intended to purchase as trustee, but, unfortunately, executed the contract without proper designation to that effect. The mistake was not mutual, and reformation cannot be decreed. The contract on its face binds the trust company in its corporate capacity. Does that fact render the contract *ultra vires?* The extent of the corporate power is found in the statute under which the trust company was organized, and, being a public law, plaintiffs and the trust company must be held cognizant of its provisions with reference to this transaction. We cannot hold the contract *ultra vires.*

The trust company was empowered to act as trustee. It could purchase real estate for trust purposes. It was not an *ultra vires* act for it to do so in this instance. The trust agreement came into existence after plaintiffs had signed the contract but before the trust company signed, and, as between the vendee and the syndicate members, the trust is valid. This being true, the trust company had power to make the purchase in its corporate capacity for the purposes of the trust. But if the land contract were *ultra vires* that defense cannot be made.

After the land contract was executed but before this suit was instituted, the legislature, by Act No. 327, Pub. Acts 1931, known as the "Michigan general corporation act," provided (section 11):

"The plea of *ultra vires* shall not be made by anyone except the corporation in an action between it and a director or officer thereof or a person having actual knowledge of the *ultra vires* act and ex-

cept by either party in an action between a share-holder and the corporation. The foregoing provision shall be construed as a limitation on the power of a corporation.''

Just what is meant by a limitation on power is not clear, for an *ultra vires* act is one beyond corporate power. The act takes away the defense that a contract, such as we have here, is void if the corporation exceeded its power in entering into it.

But it is contended that the defense of *ultra vires* is a vested right and cannot be taken away by legislation subsequent to an *ultra vires* act. We cannot so hold. Public policy, as expressed by the legislature, forbids the plea of *ultra vires,* except in specified instances, of which this is not one. The doctrine of *ultra vires* is intended to keep private corporations within their fixed powers. If a corporation transcends its powers it constitutes a violation of its charter, and the State may, by statute, say when a corporation may and when it may not plead its violation in release of contracts otherwise legitimate.

The contract was one the trust company could unquestionably make in furtherance of its capacity to act as a trustee. It may have made an error, but this error did not at all release it from its obligation under the trust agreement to acquire the property for the benefit of the syndicate members. If the contract is held *ultra vires* then the purpose of the trust will be destroyed.

The trust company did not plead *ultra vires.* The defense of *ultra vires* must be pleaded, and may not be left as a resort against an adverse decision, for it is a general rule that it should not be permitted to prevail when it will not advance justice, but only where an imperative rule of public policy requires it.

The vendee asks for a reformation of the contract to the end that it stipulate noncorporate liability of the vendee. No mutual mistake authorizing reformation to such effect is shown. The mistake was on the part of the vendee in making the obligation of the contract its corporate obligation. Such error and the consequences thereof cannot be rendered nugatory by way of reformation. This leaves the question of whether the facts and circumstances within the knowledge of plaintiffs estopped them from insisting on the letter of the contract, and whether, in equity and good conscience, they should be required to recognize the trust capacity of the vendee and look for a deficiency, if any, only against the members of the syndicate for whom the vendee was in fact acting as trustee. The trust company contends that decree for deficiency should be against syndicate members only; all of them if jointly liable; individually if proportionately liable only. The trouble with this is the want of privity of contract between members of the syndicate and plaintiffs. It will be noted that the trust agreement was executed after plaintiffs had signed the land contract. True, the members of the syndicate authorized the trust company to act as trustee in their behalf, and, as between them and the trust company, they may, within the compass of their agreements, be held to respond to the trust company, but this response cannot be carried to the plaintiffs under the undertaking by the trustee in its corporate capacity. As between the trust company and members of the syndicate the addition of the word "trustee" to the corporate name in the land contract maintained privity with relation thereto but did not go beyond that and bring privity of contract between the syndicate members and plaintiffs. The

land contract obligation, as said before, was that of the trust company.

At an early date the law on this subject was clearly stated by Mr. Justice Story in *Duvall* v. *Craig,* 2 Wheat. (15 U. S.) 45:

"A trustee, * * * if he chooses to bind himself by a personal covenant, he is liable at law, for a breach thereof, in the same manner as any other person, although he describes himself as covenanting as trustee; for, in such case, the covenant binds him personally, and the addition of the words 'as trustee' is but matter of description to show the character in which he acts for his own protection, and in no degree affects the rights or remedies of the other party."

The syndicate members contend that the syndicate agreement was void under the so-called "blue sky law" (2 Comp. Laws 1929, § 9769 *et seq.*) and cite *Freeze* v. *Smith,* 254 Mich. 386. The decision in that case was bottomed upon a sale of a unit in the syndicate after formation thereof, and not on an agreement between organizers of a syndicate taking, proportionately, shares. It is not a violation of the "blue sky law" for several persons to join and furnish, proportionately, parts of the purchase price of real property to be held for their benefit by a trustee. Sales of units by such a syndicate, after organization, cannot be made without compliance with the "blue sky law." Under the facts in this case, the point is without merit. See *Lindemulder* v. *Shoup,* 258 Mich. 679.

Defendant Frederick M. Montefiore, one of the organizers of the syndicate, was discharged from liability by the decree in the circuit.

Having in mind concessions made by counsel in the circuit and the record relative to his default and action taken on the strength thereof, we approve of the holding.

Defendant Murphy signed the syndicate agreement, but claims release by his default in payment. The syndicate agreement provided:

"Among other provisions, it shall be provided in the trust agreement that if any of the syndicate holders fail to pay on demand his proportion of the cost, payments and liabilities thereunder at the time or times when called for by the trustee, the remaining syndicate holders may purchase the interest of such defaulting party for the sum which he has paid under said agreement exclusive of interest and such payments may be made on the same terms and at the same time as the defaulting party has made payments. Such purchase shall not be obligatory upon the other syndicate members, however, and if such right of purchase is not exercised and if the default continues for 60 days, then the interest of the defaulting party in said syndicate and property shall be terminated without notice and all payments which he has made thereon shall be declared forfeited as stipulated damages and shall accrue proportionately to the interests of the other members of the syndicate."

We cannot hold that default alone terminated Mr. Murphy's contract relations.

It will be noted that the quoted agreement called for a demand of payment, and continuing "default of such defaulting party" for a period of 60 days. If the venture had proved profitable, Mr. Murphy would have been in until put out. Under the strict terms of the contract the same rule applies now to his desire to escape liability.

The decree in the circuit court is affirmed, with costs.

Sharpe, J., concurred with Wiest, J. McDonald, C. J., and Clark, Potter, and North, JJ., concurred in the result. Fead and Butzel, JJ., did not sit.