[Civ. No. 24511. Second Dist., Div. Two. Jan. 23, 1961.]

HOWARD J. FARNSWORTH et al., Appellants, v. NEVADA-CAL MANAGEMENT, LTD. (a Limited Partnership) et al., Respondents.

Holmes E. Hobart for Appellants.

Donald J. Dunne, Silbert & Silbert and Robert Komins for Respondents.

ASHBURN, J.—Plaintiffs appeal from a judgment in favor of all defendants.

Nevada-Cal Management, Ltd., is a limited copartnership. Howard and James Farnsworth bought the interests of limited partners John W. Dawson and Velma Dawson, paying $18,500 for same. They sue to recover that sum from the partnership and its general partners and from the Dawsons.

At the time of formation of this partnership in December 1950, the statute provided that a certificate of limited partnership must be filed in the offices of the county clerk and the county recorder of the county in which the principal place of business was situated, section 15502, Corporations Code. In this instance the principal place of business was in Los Angeles County, although the properties owned by the partnership were located in Nye County, Nevada, and San Bernardino County, California. The certificate was recorded in Los Angeles County on January 9, 1951, but never filed with the county clerk. Plaintiffs therefore claim that the interests of the partners were not exempt from a statutory requirement that a permit be obtained from the Commissioner of Corporations.

Section 25003, subdivision (a), Corporations Code, declares that the word ''company'' includes partnerships of every kind, and section 25008, subdivision (a), defines ''security'' as in-

cluding any "beneficial interest in title to property, profits, or earnings." Section 25500 forbids the sale by any company of any security of its own issue without having secured a permit from the Commissioner of Corporations so to do. Section 26100: "Every security of its own issue sold or issued by any company without a permit of the commissioner then in effect authorizing the issuance or sale of the security is void." On their face these sections bring partnership interests within the meaning of "security" and require a permit for their issuance, but section 25100 (before its 1953 amendment)[1] prescribed certain exemptions: "[*Exempt classes of securities.*] Except as otherwise expressly provided in this division, the Corporate Securities Law does not apply to any of the following classes of securities: . . . (m) Any partnership interest in a general partnership, or in a limited partnership where certificates are executed, filed, and recorded as provided by Section 2478 or Section 2501 of the Civil Code of the State of California, except partnership interests when offered to the public." The pertinent portion of section 2478, Civil Code, read, as did section 15502, subdivision (1)(b), Corporations Code, before its amendment in 1959: "File one of said certificates in the clerk's office and file the other for record in the office of the recorder of the county in which the principal place of business of the partnership is situated, in a book to be kept for that purpose open to public inspection, and if the partnership has places of business situated in different counties, a copy of the certificate, certified by the recorder in whose office it is recorded, must be filed in the clerk's office and recorded in like manner in the office of the recorder in each such county." The partnership certificate not having been filed in the office of the county clerk of Los Angeles County as required by the statute, plaintiffs claim that the interests in this limited partnership were not exempted by section 25100, subdivision (m), from the necessity of procuring a permit. Initially there was little room for this contention for the complaint alleges and the answers admit "[t]hat the Defendants, NEVADA-CAL MANAGEMENT, LTD., at all times herein mentioned has been and now is a limited copartnership with its principal

---

[1]By amendment of 1953 subdivision (m) was redesignated as (*l*) and references to Civil Code sections were changed to Corporations Code sections, making the subdivision now read: "(*l*) Any partnership interest in a general partnership, or in a limited partnership where certificates are executed, filed, and recorded as provided by Sections 15502 and 15525 of the Corporations Code of the State of California, except partnership interests when offered to the public."

place of business in Los Angeles County, State of California'';
but the pretrial order develops the facts concerning the failure
to file the articles in full compliance with the statute and
the point was thus saved for appellants.

■■■ The trial judge found that Nevada-Cal Management,
Ltd., at all times has been and now is a limited partnership,
that no permit was ever obtained for the issuance, sale, or
transfer of any interests in said limited partnership, that such
interests were not offered to the public, that they are securities
within the meaning of the Act ''but are exempt from the pro-
visions of said law under California Corporations Code Sec-
tion 25100, subd. (*l*).''

This seems to square with the legislative intent except to
the extent that these interests are found to be securities, a
matter discussed *infra*. Section 15044, Corporations Code
(added in 1949) says: ''Every partnership that is not formed
in accordance with the law concerning special, limited, or
mining partnerships, and every special or limited partnership,
so far only as those partners who are not special partners are
concerned, is a general partnership. Every partner who is
not a special or limited partner nor a member of a mining
partnership is a general partner.'' Mining partnerships are
somewhat unique (Pub. Resources Code, §§ 2351-2361), and
may be disregarded for the purpose of the present discussion.

We have then two types of partnership, general and limited.
To effect the formation of the latter type it is necessary to
comply substantially (Corp. Code, § 15502, subd. (2)) with
the requirements of Corporations Code, § 15502, subdivision
(1)(b), concerning the filing and recording of the partner-
ship certificate. If this is not done the persons signatory be-
come general partners *nolens volens* (§ 15044). It is apparent
to us that section 25100, subdivision (m), in using the phrase
''in a limited partnership where certificates are executed, filed,
and recorded as provided by Section 2478 or Section 2501 of
the Civil Code,'' is defining a legally constituted limited part-
nership and that the background thought of the legislators
was that any abortive attempt to form such an organization
results in a general partnership and no more need be said on
the subject. Thus all types of partnerships are exempt from
application of the Corporate Securities Law provided the in-
terests therein are not offered to the public. It appears with-
out contradiction and the court found there was no such offer-
ing; it was conceded on oral argument that there was no in-
tent to make such an offering. Appellants would give the

statute a literal interpretation which is not consistent with the fundamental purpose of the Corporate Securities Law, namely, the protection of the public. When there is to be no public offering there is no real purpose for the filing and recording of the partnership certificate to perform so far as the securities law is concerned.

 This result flows from application of a settled principle which is recognized in *People* v. *Davenport*, 13 Cal. 2d 681, 685 [91 P.2d 892] : '' [T]he rules relating to the construction of statutes, which provide that words of general import may be given a contracted meaning dependent upon the connection in which they are employed, and considering the general purpose or scheme entertained by the legislature in passing the statute, and the rule that words will not be given their literal meaning when to do so would evidently carry the operation of the enactment far beyond the legislative intent and thereby make its provisions apply to transactions never contemplated by the legislative body.'' *Blumenthal* v. *Larson*, 79 Cal.App. 726, 730 [248 P. 681, 251 P. 241] : ''The mere literal construction, however, ought not to prevail if it is opposed to the intention of the legislature apparent by the act itself; and if the words are sufficiently flexible to admit of some other construction it should be adopted to effectuate the intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.'' See also *Select Base Material, Inc.* v. *Board of Equalization*, 51 Cal.2d 640, 645 [335 P.2d 672] ; *H. S. Mann Corp.* v. *Moody*, 144 Cal.App.2d 310, 320 [301 P.2d 28] ; 45 California Jurisprudence 2d, section 130, page 637.

 That protection of the public is the primary purpose of the law is manifest. ''The general purpose and tenor of the Corporate Securities Act, as was said by the Supreme Court of the United States in the case of *Hall* v. *Geiger-Jones Co.*, 242 U.S. 539 [Ann.Cas. 1917C 643, L.R.A. 1917F 514, 61 L. Ed. 480, 37 S.Ct. 217], in which that court sustained the constitutionality of legislation of that character are, 'To protect the public against the imposition of unsubstantial schemes and the securities based upon them.' '' (*In re Leach*, 215 Cal. 536, 543 [12 P.2d 3].) ''In arriving at a determination the courts have been mindful that the general purpose of the law is to *protect the public* against the imposition of unsubstantial, unlawful and fraudulent stock and investment schemes and securities based thereon.'' (Emphasis added.) (*Stoner* v. *Bisno*, 162 Cal.App.2d 164, 172 [327 P.2d 922].)

Administrative construction of the law is quite persuasive in this instance; we are told in an article entitled "Regulation and Civil Liability Under the California Corporate Securities Act," 33 Cal.L.Rev. 343, 361: "Despite the literal wording of the Act, there has been a consistent administrative interpretation continuously since its enactment—at least until very recently—to the effect that *bona fide* general and limited partnership memberships do not constitute 'securities' requiring a permit. Moreover, the California Bar generally has proceeded with the assurance that no permit is required for memberships either in the case of a *bona fide* general partnership or in the case of a *bona fide* limited partnership. So far as known, no law partnership, public accountancy partnership, or stock brokerage partnership has ever applied for a permit to issue its memberships."

Based upon the foregoing concept of the fundamental purpose of the Act counsel for respondents advance an independent ground for affirmance which we find meritorious— that interests in the instant partnership are not securities within the purview of the statute. It is established that in this area of the law, form must yield to substance; that the courts must look through the outward appearance of transactions claimed to violate the law and render judgment in accordance with the actualities of the matter. *People* v. *Syde,* 37 Cal.2d 765, 768 [235 P.2d 601]: "The Corporate Securities Law does not contain an all-inclusive formula by which to test the facts in every case. And the courts have refrained from attempting to formulate such a test. Whether a particular instrument is to be considered a security within the meaning of the statute is a question to be determined in each case. In arriving at a determination the courts have been mindful that the general purpose of the law is to protect the public against the imposition of unsubstantial, unlawful and fraudulent stock and investment schemes and the securities based thereon." To the same effect, see *Stoner* v. *Bisno, supra,* 162 Cal.App.2d 164, 172; *People* v. *Rankin,* 160 Cal.App.2d 93, 96 [325 P.2d 10]; *People* v. *Rankin,* 169 Cal. App.2d 150, 160 [337 P.2d 182]; *People* v. *Woodson,* 78 Cal. App.2d 132, 135 [177 P.2d 586].

In the case before us it appears that Helen M. T. McCormick, Mary W. Smith, John W. Dawson, Velma Dawson, and Betty Cleminson, were coowners of certain real property in Nye County, Nevada, and San Bernardino County, California, and as such formed Nevada-Cal Management, Ltd.,

for the management, development and disposal of said land. The general partners were Loring O. McCormick, C. Hartwell Smith, and George D. Cleminson; the limited partners were Helen M. T. McCormick, Mary W. Smith, John W. Dawson, Velma Dawson and Betty Cleminson. General partners Loring O. McCormick and George D. Cleminson were husbands of two of the limited partners, and general partner C. Hartwell Smith was the father of Mary W. Smith, another limited partner. The limited partners contributed their pro rata shares of the real property and the general partners one dollar each. The general partners were to be paid "in like manner and amount as any other service hired or purchased," but they were not to share in any part of the net profits, all of which were to go to the limited partners. Management policies were to reside in the general partners but none of them to receive any compensation for services unless approved and authorized by a majority interest of the limited partners. The certificate contains appropriate restrictions upon admission of new members, general or limited.

Upon formation there was a single partnership certificate executed by all general and limited partners; no duplicate and nothing else in the way of a participation certificate or other evidence of partnership interest was delivered to any partner. Plainly, this was a closed venture, unaccompanied by any intention to offer participations to the public and not followed by an actual offering.

There is a broad distinction between such an original association of individuals for mutual profit and a later sale or issuance to outsiders of participating interests. This is brought out in the case of *Wardowski* v. *Guardian Trust Co.*, 262 Mich. 422 [247 N.W. 908, 909-910] : "The syndicate members contend that the syndicate agreement was void under the so-called 'Blue Sky Law' . . . and cite *Freeze* v. *Smith*, 254 Mich. 386 [236 N.W. 810]. The decision in that case was bottomed upon a sale of a unit in the syndicate after formation thereof and not on an agreement between organizers of a syndicate taking, proportionately, shares. It is not a violation of the 'Blue Sky Law' for several persons to join and furnish, proportionately, parts of the purchase price of real property to be held for their benefit by a trustee. Sales of units by such a syndicate, after organization, cannot be made without compliance with the 'Blue Sky Law.' "

*State* v. *Simons*, 193 Ore. 274 [238 P.2d 247]. Defendant was convicted of unlawful sale of unregistered securities. In

the course of the opinion it is said: (pp. 254-255 [238 P.2d])
"It is argued that, because of evidence that defendants in-
tended at some future time to organize the subscribers as a
limited partnership under Oregon law, we must construe the
Securities Law with that fact in view. The weakness of the
argument lies in the fact that we are not considering the
actions of a group of persons voluntarily associated together
in a joint venture, but rather a sale of securities to persons
indiscriminately selected and having no bond of union other
than the fact that they had money and the gambling instinct.
. . . The use of the provisions of the Limited Partnership Act
. . . as a cloak to legalize the acts of the defendants in this
case is an inadmissible expedient. . . ."

We hold that this partnership, whether limited or general,
is not subversive of the fundamental purpose of the Act, and
that interests therein do not constitute securities within the
purview of the statute.

The foregoing views are not opposed to cases such as
*People* v. *Hoshor,* 92 Cal.App.2d 250 [206 P.2d 882], and
*People* v. *Dutton,* 41 Cal.App.2d 866, 869 [107 P.2d 937],
wherein individual limited partnership agreements were issued
to investors in a larger project; nor are our views in con-
flict with *People* v. *Woodson, supra,* 78 Cal.App.2d 132, 135,
where each "investor received a document purporting to
entitle him to an undivided interest in the profits derived from
the enterprise"; in those instances the agreements were held
to be but evasions of the statute and hence void for want of a
permit from the commissioner.

Plaintiffs-appellants also take the position that the
sale of the Dawsons' interest in April 1953, was not within
the exemption of sales made by an owner for his own benefit
as sanctioned by section 25152, Corporations Code: "Except
as expressly provided in this division, the Corporate Securities
Law does not apply to the sale of securities when (a) made
by or on behalf of a vendor not the issuer or underwriter
thereof who, being a bona fide owner of the securities, disposes
of his own property for his own account, and (b) the sale
is not made, directly or indirectly, for the benefit of the issuer
or an underwriter of the security, or for the direct or in-
direct promotion of any scheme or enterprise with the intent
of violating or evading any provision of the Corporate Securi-
ties Law."

The undisputed showing is that the Dawsons were not issu-
ers of a security, were bona fide owners of the particular in-

terest and disposed of same for their own account. They had no negotiations whatever with the plaintiff-buyers and did not know them. The deal was arranged by defendant Smith, who was one of the general partners of Nevada-Cal Management, Ltd. Moreover, the proof shows that the sale was not made directly or indirectly for the benefit of the partnership or the promotion of any scheme or enterprise with intent to violate or evade the provisions of the law. True, a part of the proceeds of the sale went into the bank account of the partnership. Of the total purchase price of $18,500 the Dawsons received $15,500, and the partnership the remaining $3,000. But there is nothing to show that the Dawsons were parties to anything other than a sale of their interest for $15,500, and therefore what happened to the other $3,000, with which they had no concern, was of no legal consequence when determining the question of their liability to plaintiffs. In fact it was credited to the capital accounts of the two Farnsworths. The trial judge found in the Dawsons' favor.

After the plaintiffs had bought the Dawson interests they paid to the partnership an assessment of $1,500. Under the articles such sums were to be treated as loans to the partnership. The court rendered judgment in favor of the plaintiffs and against the partnership and the general partners for the said sum of $1,500 with interest. No party takes any exception to this feature of the judgment.

Other points raised by counsel require no discussion.

Judgment affirmed.

Fox, P. J., concurred.

A petition for a rehearing was denied February 16, 1961.