# CIRCUIT COURT OF THE CITY OF NORFOLK

Ruth Bazemore

    v.

Anthony Epps et al.

December 22, 2000

Case No. L00-260

BY JUDGE CHARLES D. GRIFFITH, JR.

Plaintiff filed a Motion for Judgment on February 7, 2000, alleging that Defendants improperly advised her to make an investment that ultimately resulted in Plaintiff losing a substantial sum of money. Plaintiff's claims were for breach of contract, breach of fiduciary duty, and fraud, as well as a violation of the Virginia Securities Act, Va. Code § 13.1-500 *et seq*. After a trial on the merits, Defendants' Motion to Strike was granted as to all claims except the violation of the Securities Act. The pertinent issue is whether the investment itself qualifies as a "security" under the Act. For the reasons that follow, this Court concludes that the investment in question is a security, and therefore, the Securities Act governs Defendants' conduct.

Defendant Epps owns a life insurance business, and Plaintiff has been previously acquainted with Defendant Epps through this enterprise. Plaintiff inherited money after her husband's death and subsequently sought consultation with Defendants in investing the proceeds. Thereafter, Plaintiff purchased a life insurance annuity through Defendant Epps. In October of 1998, Defendant Epps advised Plaintiff to invest in Capital Plus Worldwide Financial Services, Inc. Defendant Epps advised Plaintiff that her investment was guaranteed and would generate a return of 6% per month.

As part of the investment, Plaintiff signed a "Joint Venture Agreement" outlining the terms of the transaction. The Agreement called Plaintiff the "Venture Partner" and Capital Plus the "Managing Partner." The Agreement read, in part, as follows:

*1.00 Purpose of the Agreement*

1.01 The purpose of the Agreement is to attempt to enable the Venture Partner to obtain a high yield on his contributions by placing the Joint Venture Partner's Contribution along with the Managing Partner's Efforts into the Joint Venture. The Joint Venture Partner understands and agrees that to fulfill the purpose of this Agreement the Managing Partner must be and is hereby granted the authority to execute any and all necessary documents and instructions on behalf of the Venture Partner in connection with managing his share of the Joint Venture.

Joint Venture Agreement at 1. The Managing Partner's Efforts were defined as "strategic alliances with various entities" and "a unique business opportunity." *See id.* The Agreement also read:

*2.00 Obligations of Managing Partner*

2.01 Managing Partner is required to use its best efforts to fulfill the purpose of this Agreement . . . .

*3.00 Obligations of Joint Venture Partner*

3.01 Venture Partner agrees to deliver the Contribution to the Attorneys designated escrow bank account no later than three (3) banking days from the signature of this Agreement or (Last day of the month).

3.02 Venture Partner warrants, that the contribution Asset was acquired through legitimate non-criminal activities.

*See id.* There was no other indication in the Agreement that Plaintiff was required to do anything other than invest her capital, nor that she had any ability to control the operations of the venture.

Va. Code § 13.1-501 defines security as, *inter alia*, "a certificate of interest or participation in any profit-sharing agreement," and an "investment contract." This code section mirrors the Federal Securities Exchange Act and provides an identical definition for the term "security." Securities Exchange Act of 1934, § 14(a), 15 U.S.C. § 78n(a). Although Virginia courts have not examined the meaning of the phrase "investment contract" under the state securities regulations, the Fourth Circuit has done so under the Federal regulations, as has the United States Supreme Court, and both examinations dictate that the transaction in question in this case was a "security" under Federal law.

In *S.E.C. v. W. J. Howey Co.*, 328 U.S. 293, 66 S. Ct. 1100 (1946), the Supreme Court established that "an investment contract . . . means a contract, transaction or scheme whereby a person [1] invests his money [2] in a common enterprise and [3] is led to expect profits [4] solely from the efforts of others." *Id.* at 298-99, 66 S. Ct. at 1102-03. "And the Court later instructed that the *Howey* test is to be applied with an eye to 'the substance — the economic realities of the transaction — rather than the names that may have been employed by the parties'." *Allen v. Lloyd's of London*, 94 F.3d 923, 930 (4th Cir. 1996), citing *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 851-52, 95 S. Ct. 2051, 2060 (1975).

Using the *Howey* test to explain the Federal Securities Exchange Act, courts in the Fourth Circuit have expressly held that partnership interests such as those in joint ventures may fall under the definition of a security. In *Diaz Vicente v. Obenauer*, 736 F. Supp. 679 (E.D. Va. 1990), the court examined both the definitions of "investment contract" and "certificate of interest or participation in any profit sharing agreement." There, the plaintiffs had invested money with a real estate development project called Las Gaviotas under a number of "Participation Agreements." *See id.* at 682. Under the Agreements, the plaintiffs had no control over the project and were mere passive investors, even thought the operative documents were not drafted expressly as investment certificates.

The court concluded, using the *Howey* test, that "Plaintiffs invested their money with the expectation of profiting from the Obenauers' development of Las Gaviotas. The Agreements, therefore, fit squarely within the settled definitions of "securities" under [the Federal regulations.]" *See id.* at 692. Additionally, although the court did not discuss the issue, it also allowed recovery on the state securities claim, noting that the "legal requirement for the fraudulent conduct to occur in connection with a 'security'" was "clearly satisfied." *See id.* at 694. *See also Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236 (4th Cir. 1988), citing *Williamson v. Tucker*, 645 F.2d 404, 422 (5th Cir.), *cert denied*, 454 U.S. 897, 102 S. Ct. 396 (1981) ("a partnership can be an investment contract only when the partners are so dependent on a particular manager that they cannot replace him or otherwise exercise ultimate control.")

Because Virginia's definition of a "security" is identical to the Federal definition, the analysis of the United States Supreme Court as well as that of the Fourth Circuit is applicable. In addition, other states have examined their own securities regulations that mirror the Federal definition in line with the Federal cases. In *Schultz v. Rector*, 261 Ark. 769, 552 S.W.2d 4 (1977), the Arkansas Supreme Court held that sales of interests in a "joint venture" to

develop and manage an apartment complex could be characterized as securities under that state's securities regulations. The Arkansas statute also defined "security" as an "investment contract." Consequently, the court examined the *Howey* test in looking at its own state statute. *See id.* at 778. The court therein concluded that the investors' lack of control over the enterprise made the transaction a security, stating:

> In no sense was this a partnership in which a number of persons expected to pool their talents and capital and reap the benefits from their own expertise and abilities. The . . . investors were mere passive contributors of risk capital who placed their money in an investment program labeled a "joint venture." However, the wording of the Trust Agreement and the Joint Venture Agreement, set forth a clear wall of difference between the promoters and the investors. . . . In short, when the transaction is examined as a whole, it constitutes the sale of securities within the meaning of the Arkansas Securities Act.

*See id.* at 782-83. Courts in other states with similar statutory provisions have made analogous rulings. *See State of Hawaii v. Hawaii Market Center*, 52 Haw. 642, 485 P.2d 105 (1971); *Searsy v. Commercial Trading Corp.*, 560 S.W.2d 637 (Tex. 1977); *Freeze v. Smith*, 254 Mich. 386.

In this case, Plaintiff had no control in the Agreement or otherwise to control the operations of Capital Plus Worldwide Financial Services. She did not enter into a partnership with any organization in order to pool common abilities or expertise. There was no common agreement of partnership, in the sense of sharing management or control. Instead, Plaintiff relied upon advice from Defendants as to how she should invest funds she had in life insurance annuities. As under *Howey*, Plaintiff "invested her money in a common enterprise and was led to expect profits solely from the efforts of others." *Howey* at 298-99, 66 S. Ct. at 1102-03. As such, the "joint venture" constituted the sale of a security under Va. Code § 13.1-501.

Defendant acknowledges that he has no license to engage in any other business than life insurance. Defendant's conduct in dealing with the Plaintiff fits the definition of "investment advisor" as set forth in Va. Code § 13.1-501. Further, Defendant admits that he is not a registered investment advisor as required by Va. Code § 13.1-507. The joint venture that Defendant obtained Plaintiff's contribution for was an unregistered security. Thus, the sale of such security constitutes a violation of Va. Code § 13.1-507. The Court further finds that none of the exemptions listed in Va. Code § 13.1-514 (A) and (B) apply to the transaction in this case. Additionally, Defendant has not claimed

that any such exemption exists and, therefore, has not met the burden required by Va. Code § 13.1-504(C).

Pursuant to Va. Code § 13.1-522, Defendant sold a security in violation of Va. Code § 13.1-504(A)(ii) and 13.1-507(i). Therefore, Defendant is liable to Plaintiff for the consideration paid for the security plus interest thereon at the annual rate of 6%, costs, and reasonable attorney's fees. *See* Va. Code § 13.1-522. The Court hereby orders that Defendant pay to Plaintiff the sum of $40,000 plus 6% annual interest dating from November 17, 1998, to the present. Additionally, the Court orders Defendant to pay Plaintiff's costs and attorney's fees in the amount of $5,128.98.