[Crim. No. 4079.   Second Dist., Div. Two.   Feb. 17, 1947.]

THE PEOPLE, Respondent, v. HARRY E. WOODSON, Appellant.

Willedd Andrews for Appellant.

Robert W. Kenny, Attorney General, and Laughlin E. Waters, Deputy Attorney General, for Respondent.

WILSON, J.—The question raised by this appeal is not, as stated by appellant, whether a partnership can be organized without a permit from the Corporation Commissioner, but is whether an individual or a partnership may offer for sale or sell securities of his or its own issue without a permit.

Appellant was charged with four separate violations of the Corporate Securities Act, was tried without a jury, and was convicted on three counts and acquitted on one. The appeal is from the judgment of conviction.

The applicable sections of the Corporate Securities Act (2 Deering's Gen. Laws, 1944 ed., Act 3814, p. 1418) are as follows: Section 2, subdivision 3: "The word 'company' includes all . . . partnerships of every kind, . . . and also individuals as hereinafter defined." Subdivision 6: "The word 'individual' in so far as it is included in the definition of a 'company,'" includes only persons selling, offering for sale, negotiating for the sale of or taking subscriptions for any security of their own issue." Subdivision 7: "The word 'security' shall include any stock, bond, note, . . . evidence of indebtedness, certificate of interest or participation, certificate of interest in a profit-sharing agreement. . . ." Subdivision 8: " 'Sale' or 'sell' shall include every disposition, or attempt to dispose, of a security or interest in a security for value. . . ." (Stats. 1945, ch. 399, p. 853.)

Section 3: "No company shall sell any security, . . . or offer for sale, negotiate for the sale of, or take subscriptions for any security of its own issue until it shall have first ap-

plied for and secured from the commissioner a permit author-izing it so to do. . . ." (Stats. 1941, ch. 615, p. 2064.)

Section 17: "Every company which shall directly or indi-rectly offer for sale, or negotiate for the sale of or sell, or issue, or cause to be issued any security contrary to the provi-sions of this act, . . . shall be guilty of a public offense and shall be punishable by a fine not exceeding ten thousand dol-lars." (Stats. 1931, ch. 423, pp. 937, 950.)

Appellant's method of operation varied but little in dealing with the several persons from whom he obtained money. He placed an advertisement in a newspaper reading: "Assoc. Sportsman, Club & cattle ranch. Nom. inv. Box A-84, Times."

Sam Nicholas answered this advertisement and was later met by appellant. The latter told Nicholas that he had a lease on a ranch in Modoc County with which was to be operated a "club membership deal." In return for $2,000 Nicholas was to receive a one-fifth interest in all appellant's transactions and was to be employed on the ranch at a salary of $300 per month. Nicholas paid said sum to appellant and received a promissory note for $2,000, due 60 days after date, and a document entitled "Certificate of Limited Partnership," re-citing that appellant was the general partner and Nicholas the limited partner, and that the latter should receive by way of income 5/25ths of the net profits of the partnership.

Dave Badel answered a similar advertisement and through it met appellant. The latter told Badel that he had leased the ranch above mentioned and desired an associate to invest $1,000 or more for the purpose of buying cattle to be placed on the ranch. In return for his investment Badel was to receive 2/25ths of the profits and was to be employed on the ranch at $300 per month. Badel paid $2,000 to appellant and in return received a promissory note, due 120 days after date, and an agreement reciting that appellant held a lease on the ranch; that he had purchased 1,000 head of cattle to be placed thereon; that when they were sold an accounting would be rendered and after the promissory note had been paid appel-lant would pay 2/25ths of the profits on the cattle transaction to Badel; that the latter should be employed during the life of the agreement at a salary of $300 per month.

Edward Holland also met appellant through an advertise-ment and gave him $1,000 in return for which he received a promissory note, due nine months after date, and a "share lease" agreement wherein appellant purported to lease to

Holland 100 acres of land in Modoc County, stated to be a part of a larger acreage to be operated by appellant; that appellant should operate the land and deliver one-half of the net crop to Holland. The agreement recited the execution of said note and provided that excess earnings should not be declared as a profit until the note and the operating charges had been paid.

The evidence concerning the fourth charge in the information related to a transaction with C. L. Whipp, similar in nature to that made with Nicholas. Whipp received a promissory note for the amount paid to appellant and a ''certificate of limited partnership.'' He was promised employment for himself and his wife at $250 a month and was to receive a one-fifth interest in the profits. The acquittal on this charge was because the transaction was consummated in another county.

Needless to say, none of the parties received any return whatsoever on their investments. Appellant had not applied for or received a permit from the Corporation Commissioner authorizing any of the transactions.

In each instance appellant gave his promissory note for the amount received and in each instance the investor received a document purporting to entitle him to an undivided interest in the profits derived from the enterprise,—a sale of securities in violation of the statute.

The term ''security'' as defined in the statute includes a note, evidence of indebtedness, certificate of interest or participation, and certificate of interest in a profit-sharing agreement. The documents issued by appellant are within the statutory definition. The word ''company'' as defined by the statute includes partnerships of every kind and individuals. An individual as well as a company or corporation is prohibited from selling any security of his own issue. (*People* v. *Craven*, 219 Cal. 522, 525 [27 P.2d 906].) While the courts have declined to give an inclusive or exclusive definition of the term ''security'' they will look through form to substance and determine whether the transaction is one coming within the terms of the statute. (*Domestic & Foreign Petroleum Co., Ltd.* v. *Long*, 4 Cal.2d 547, 555 [51 P.2d 73].) The state may require an individual who issues securities to the public to obtain a permit (Idem, p. 558; *People* v. *Craven, supra; In re Leach*, 215 Cal. 536, 541 [12 P.2d 3]) and it may do so although the individual proposes to issue securities in private transactions. (*Cecil B. DeMille Productions, Inc.*

v. *Woolery,* (C.C.A. 9) 61 F.2d 45, 50; *Domestic & Foreign Petroleum Co., Ltd.* v. *Long, supra,* at p. ,556.)

The issuance of partnership securities (*People* v. *Simonsen,* 64 Cal.App. 97, 100 [220 P. 442]) and limited partnership agreements (*People* v. *Dutton,* 41 Cal.App.2d 866, 869, 873 [107 P.2d 937]) without a permit are prohibited by the statute. The transactions charged against appellant are similar to those in the Dutton case wherein the documents in evidence were held to be "securities" within the definition of the statute. It is a violation of the act to issue without a permit a promissory note accompanied by a security as collateral for its payment (*People* v. *Weibert,* 18 Cal.App.2d 457, 468 [64 P.2d 169]), or a promissory note and a profit-sharing agreement as parts of the same transaction. (*People* v. *Sidwell,* 27 Cal.2d 121, 128 [162 P.2d 913].)

We are not unmindful of what is said in *People* v. *Davenport,* 13 Cal.2d 681, 687 [91 P.2d 892], that the statute does not extend to ordinary commercial transactions, to interest from the lending of money, nor to the profits which one may make by his own efforts as the result of any ordinary commercial contract. Appellant's transactions do not come within those exceptions.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.