[Civ. No. 13534. First Dist., Div. Two. Jan. 24, 1949.]

GANTNER & MATTERN CO. (a Corporation), Appellant,
v. DOUGLAS H. HAWKINS, Respondent.

Erskine, Erskine & Tulley for Appellant.

S. A. Ladar, Jesse H. Steinhart and John J. Goldberg for Respondent.

DOOLING, J.—Appellant Gantner & Mattern Company is a manufacturer of men's and women's garments including sweaters, swimming suits, women's play suits or sun suits and shorts. In 1932, appellant employed respondent Hawkins by an oral contract to act as its salesman to retail stores and merchants in certain territory in the southern part of the United States upon commissions on goods actually delivered with a drawing account against such commissions. This contract was admittedly terminable at the will of either party.

In 1943, respondent commenced to sell in the same territory a line of women's wear manufactured by Koret of California. Upon learning of this fact John O. Gantner, Jr., appellant's vice-president and treasurer, inquired of Hawkins the character of goods being handled by him for Koret and from Hawkin's reply ascertained that the only directly competing goods of Koret then being sold by Hawkins were women's sweaters. Hawkins was thereafter continued in his employment by appellant and it is expressly conceded that as to the goods of Koret of the classes then being sold by Hawkins there was a waiver of the contract requirement that Hawkins handle the goods manufactured by appellant exclusively.

Hawkins continued in the employment of appellant until February of 1945. At that time Hawkins visited San Francisco, where appellant's principal place of business is located, and informed John O. Gantner, Jr., that he was resigning

from appellant's employment to devote his entire time to the business of Koret of California and possibly to engage in the future in the retail business. Gantner informed Hawkins that he would not be paid commissions on any articles thereafter shipped into Hawkins' territory on orders already obtained by Hawkins. Hawkins then refused to resign and Gantner discharged him. The reasons assigned for Hawkins' discharge were that he had commenced selling a line of competing goods and had embarked on a program of retail business.

Thereafter appellant commenced an action against respondent for declaratory relief. In the complaint it was alleged that respondent in violation of his contract of employment had sold the goods of Koret of California which competed with appellant's goods and also in violation of his agreement had acquired an interest in retail stores. It was further alleged that respondent under his contract of employment by appellant was bound to furnish "good will" services for appellant in maintaining the good will of dealers in his territory in connection with goods already ordered, which good will services were a part of the consideration for which commissions were paid. It was then alleged that a controversy existed as to respondent's right to commissions and appellant prayed that the court adjudge that nothing was due to respondent on account of such commissions. Respondent answered and filed a cross-complaint for the commissions attributable to goods sold by him before his discharge. The court gave judgment for respondent for his commissions on his cross-complaint and from that judgment this appeal is taken.

On the trial, as already noticed, it was established that in 1943 with knowledge of the various classes of articles which respondent Hawkins was then selling for Koret of California appellant continued him in its employ and it is conceded that this was a waiver of such conduct insofar as those classes of articles are concerned. The issue of Hawkins' selling of competitive clothes for Koret was thereby narrowed down to the sale of women's play suits or sun suits.

It was established that in the spring of 1944 Hawkins commenced to sell such articles for Koret. In December of 1943, Gantner wrote to Hawkins to inquire if he was selling play suits for Koret. Hawkins replied that he was not but that if the picture changed he would advise Gantner in detail. Although he commenced selling Koret's play suits in the spring of 1944 he never communicated that fact to appellant.

The trial court found that "(d)uring the period from June 1, 1943 to February 16, 1945, defendant Hawkins sold said Koret line of goods with the knowledge, acquiescence and consent of plaintiff corporation."

This finding is attacked as not sufficiently specific since it does not refer by designation to play suits or sun suits. It is as specific as the complaint in this regard, which enumerated the articles manufactured by Koret of California including "play clothes" and alleged that defendant was selling this line in violation of his agreement. The findings contain a similar enumeration including "women's play clothes or sun suits" and "said Koret line of goods" in the finding first quoted refers to and embodies this enumeration. It needs no lengthy citation of authorities to establish that findings need be no more specific than the pleadings (24 Cal.Jur. 985), and that a finding is, if possible, to be given such a construction as will uphold the judgment (24 Cal.Jur. 1009). The finding of knowledge, acquiescence and consent of the plaintiff to defendant's selling the "Koret line of goods" sufficiently includes its knowledge of, acquiescence in and consent to the sale of Koret's play suits and sun suits.

Appellant's chief attack is based on the claim that there is no evidence to support the finding that appellant had knowledge of the fact that respondent was selling Koret's play or sun suits prior to February, 1945, when it was first informed of that fact by Hawkins. In support of this claim it points to Hawkins' letter of December, 1943, in which he told Gantner that he had never heard of a line of Koret play clothes but would advise Gantner in detail if the picture changed; to the fact that Hawkins did not so advise Gantner until asked the direct question just before his discharge; to a letter from one Taylor, Hawkins' subagent, of April 16, 1944, in which Taylor told Gantner that "(a)s to Koret we have no sun suits or play clothes" except "a Rayon Gaberdine short . . . that tricks like a skirt, that you might consider play clothes"; and to Gantner's denial that he knew that Hawkins was selling sun suits or play clothes prior to being so informed by Hawkins in February, 1945.

We may accept appellant's contention that actual knowledge as distinguished from constructive notice must be proved to establish a waiver of the sale of Koret play clothes by appellant, but actual knowledge need not be directly proved. It, like any other fact, may be inferred from circumstantial evidence. (20 Am.Jur., Evidence, § 272, p. 260,

§§ 335, 336, pp. 312, 313; 31 C.J.S., Evidence, § 178, p. 880; 46 C.J., Notice, § 110, p. 568; 2 Pomeroy's Equity Jurisprudence (5th ed.), §§ 595, 596, pp. 611-619; *People* v. *Juehling*, 10 Cal.App.2d 527, 531 [52 P.2d 520]; *Schlief* v. *Grigsby*, 88 Cal.App.174, 180-181 [263 P. 255]; *Hawke* v. *California Realty etc. Co.*, 28 Cal.App. 377, 382 [152 P. 959]; and *cf.*, *Cope* v. *Davison*, 30 Cal.2d 193, 200 [180 P.2d 873, 171 A.L.R. 667].)

◼ Herein it appears that as early as December, 1943, Gantner inquired of Hawkins if he was selling play clothes for Koret; that Gantner testified that in a general way he knew the Koret line of goods; that in December, 1943, Koret commenced to advertise play clothes in certain trade journals which were read by Gantner; and that sometime prior to October 30, 1944, one Upland, appellant's supervisor of salesmen, went to New Orleans, which was in respondent's territory, and at Gantner's request visited several dealers there to whom Hawkins sold goods. In this connection the form of Mr. Gantner's denial of such knowledge may have impressed the trial judge as somewhat less than convincing. We quote it here in full: Q. Prior to that conversation with Mr. Hawkins did you know that he was selling play suits or sun suits in the territory which he was covering for your company? A. I did not actually know that, no. Q. Had he ever told you? A. No. I had asked him before, though, because I had suspicion that he would be doing it. Q. Never mind about your suspicions. Had Hawkins ever told you prior to the conversation of February, 1945, that he was selling play suits or sun suits for Koret in the territory which he was covering for your company? A. No."

Despite this somewhat qualified denial of knowledge the evidence was sufficient to support an inference by the trial court that at least several months before February, 1945, and certainly not later than October, 1944, when Upland visited several dealers to whom Hawkins made sales in New Orleans, appellant had actual knowledge of the fact that Hawkins was selling play clothes for Koret and with that knowledge elected to keep him as its agent.

◼ The claim that as a part of the consideration for his commissions respondent was bound to continue his good will services is answered 1. by respondent's testimony that he offered to perform such services and his offer was refused; 2. by an adverse finding on conflicting evidence against the

claim that the contract bound respondent to continue such services in order to earn his commissions on sales already made; and 3. by the fact that such a construction of a contract at will would be most unreasonable since it would put it in appellant's power to deprive respondent of commissions at any time by discharging him after orders were obtained and before they were filled. It is the general rule that a principal cannot deprive his agent of commissions on goods ordered through him by discharging him before the orders are filled. (*Zinn* v. *Ex-Cell-O Corp.*, 24 Cal.2d 290, 296 [149 P.2d 177].)

 Appellant complains of the refusal of the court to compel the witness Koret to produce the records of Koret of California which would show the sales of Koret's play clothes by respondent and the date when such sales commenced. In view of our conclusion that the evidence supports the finding that appellant with knowledge of such sales acquiesced in and consented thereto the exclusion of this evidence was not prejudicial.

There was no proof that respondent had engaged in the retail business and no question in that connection is urged on appeal.

Judgment affirmed.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied February 23, 1949, and appellant's petition for a hearing by the Supreme Court was denied March 24, 1949.