[Civ. No. 18779.   Second Dist., Div. One.   Apr. 8, 1952.]

VINCENT TAORMINA et al., Respondents, v. ANTELOPE MINING CORPORATION et al., Appellants.

Rex B. Goodcell for Appellants.

Alfred J. McCourtney for Respondents.

WHITE, P. J.—Plaintiffs brought an action to recover the sum of $3,500 paid by them for the purchase of capital stock of the defendant Antelope Mining Corporation. This appeal is from the judgment, entered after trial before the court, against defendant corporation and W. B. Stevens and Frank L. DeWolf, directors thereof.

Plaintiffs alleged that the defendant corporation had been granted a permit by the Commissioner of Corporations to issue capital stock of the par value of $20,000, with the provision that the certificates should be held in escrow and not released without the written consent of the Commissioner of Corporations; that on October 4, 1949, plaintiffs and defendants entered into an agreement, a copy being annexed to the complaint, for the sale of 5 per cent of the capital stock of the corporation to plaintiffs for the sum of $3,500, which sum the plaintiffs paid; that at the time of making the agreement written consent of the Commissioner of Corporations for such sale had not been obtained and never was obtained; that consequently the agreement was void and the defendants became indebted to plaintiffs in the sum of $3,500. By a second cause of action it was charged that the defendants conspired to violate the Corporate Securities Law (Corp. Code, § 25000 et seq.) and to defraud plaintiffs by falsely representing that they, defendants, had authority to issue stock and enter into the agreement of sale. The defendants' answer consisted of denials. The trial court found the allegations of the complaint to be true and the denials of the answer untrue.

Appellants contend that the findings are not supported by the evidence, but that should this court conclude that the findings of conspiracy are supported by the evidence, then all the parties to the agreement for sale of the stock are *in pari delicto,* and plaintiffs should not recover. Neither of these contentions may be sustained.

The permit issued by the Commissioner of Corporations in 1948, authorizing the issuance of 20,000 shares to W. B. Stevens, R. B. Stevens, M. L. Stevens and Frank L.

DeWolf, provided that the certificates evidencing such shares should be deposited with an escrow holder, "and that the owner or persons entitled to said shares shall not consummate a sale or transfer of said shares, or any interest therein, *or receive any consideration therefor,* until the written consent of said Commissioner shall have been obtained so to do." (Italics added.)

The undisputed facts are that plaintiffs became interested in the corporation's mining property, near Lancaster, California, through one Schmidt, in whom plaintiffs had confidence. They visited the mining property and were introduced by Schmidt to defendants W. B. Stevens and DeWolf. On October 4, 1949, after visiting the mine, plaintiffs, Schmidt, Stevens and DeWolf went to the office of an attorney in Lancaster, an attorney whom none of the parties had previously met, and after a conference, the attorney drafted the following agreement:

"This agreement entered into this 4th day of October, 1949 in the town of Lancaster, California by and between the Antelope Mining Corporation, a California corporation, referred to herein as corporation, Percy Schmidt, referred to herein as Schmidt and Vincent Taormina and Yula D. Taormina, husband and wife referred to herein at Taormina, whereby the parties agree as follows:

### WITNESSETH

"WHEREAS, Antelope Mining Corporation is desirous of borrowing money to enable them to continue operations and,

"WHEREAS, corporation and Schmidt have a presently existing agreement which they desire to change, and,

"WHEREAS, Taormina is willing to pay the sum of Thirty-Five Hundred Dollars ($3500.00) under the terms set forth herein,

"Now THEREFORE, it is agreed as follows:

"1. That said agreement between Schmidt and the corporation entered into on August 4th, 1949 shall be cancelled and in its place Schmidt shall be given 28⅓% of the total capital stock issued *to* the corporation.

"2. Taormina shall be *given* 5% of the capital stock issued *to* the corporation. Taormina agrees to *give* to Antelope Mining Corporation as soon as possible but not later than thirty (30) days after date of this agreement, to wit: $2500.00.

"3. The corporation agrees that they will immediately procure legal counsel to take the necessary steps to effect the

transfer of the capital stock in the proportions herein set forth. It is agreed and understood that there has been issued *to* the corporation twenty thousand shares (20,000) of stock at a par value of one dollar ($1.00) per share.

"4. It is agreed that the corporation's Articles and By-Laws shall be amended to require a 66⅔% majority vote to effect any of the following items:

"A. To pay any salary or salaries to any member of the corporation except for actual labor in connection with the operation of the mine in which event the salary shall not exceed the going salary for such type of work.

"B. Making any capital investment in excess of one thousand dollars ($1,000.00).

"5. Dividends shall be declared quarterly based on the statement of the corporation closing the books February 1st, 1950 and quarterly thereafter. A minimum of 50% of the net profits for the preceding three months shall be paid out as dividends. This shall be subject to change only by 66⅔% majority vote.

"6. It is agreed that either Schmidt or Taormina shall be elected to serve on the Board of Directors.

"IN WITNESS WHEREOF we hereunto set our hands and seals the day and year above first written.

> "ANTELOPE MINING CORP.
>
> "By: W. B. Stevens
>     Frank L. DeWolf
>
> "Percy Schmidt
> "Vincent Taormina
> "Yula D. Taormina."

Upon the execution of the agreement plaintiffs paid $1,000 to defendant corporation, and on October 15, 1949, they paid an additional $2,500, receiving a receipt signed by defendant Stevens as president of the corporation "for payment in full for five percent of Antelope Mining Corp. stock to be authorized by the Corporation Commissioner." About a week later, according to the testimony of defendant Stevens, he delivered to plaintiff Vincent Taormina a promissory note of the corporation for $3,500, containing the notation: "This note to be secured by stock when authorized by the Calif. Corporation Commissioner." Stevens testified that what he "really meant" was that "when the stock was authorized to be transferred, why, he would deliver the note back to us . . . that he would be compensated by having his stock." Mr. Taormina testified that when he was handed the note,

he "never accepted it," but sent it to the attorney in Lancaster "to see if it was right for me to accept it at any time, and I never accepted it."

Upon the foregoing facts the trial court was warranted in drawing the inference that there was an attempted sale of corporate stock in violation of the plain provisions of the permit issued by the Commissioner of Corporations. Appellants would have us hold that the trial court should have construed the agreement as one whereby plaintiffs loaned the corporation $3,500 and were to receive in return not only the money loaned but a bonus of 5 per cent of the corporate stock, to be transferred within the escrow. Under well settled rules, this court may not, even were it inclined so to do in this cause, disturb the conclusions of the trial court, as they are founded upon substantial evidence. The agreement above set forth was ambiguous and uncertain. It refers to "borrowing" by the corporation, but does not refer to a "loan" by the Taorminas or for the repayment or evidencing of such a loan. The trial court construed the agreement in the light of the circumstances surrounding its execution and the testimony of the parties to it. In addition to the testimony of plaintiffs to the effect that they were not making a loan but believed they were purchasing stock, and that they were not informed of the inhibitions on such purchase contained in the permit of the Commissioner of Corporations, there is the fact that the promissory note was not delivered to plaintiffs until some weeks after the execution of the agreement and payment of the consideration, and the testimony as above noted of defendant Stevens that he understood that the note was to be returned to the corporation and that all plaintiffs were to receive was the promised stock. Under the evidence, the trial court could well conclude that the execution and delivery of the note constituted a belated attempt to conceal the true nature of the transaction. Further, even assuming appellants' version of the transaction to be true, there was a violation of the terms of the permit, for even under this version there was a transfer of an interest in the stock in consideration of a loan to the corporation.

Appellants, in attacking the findings, point out that no demand was made for the return of the money paid, no notice of rescission given, and no tender made of the promissory note received by plaintiffs. These were unnecessary. Plaintiffs' action sounds in tort, for fraud. While it has

long been settled that the purchaser of securities issued in violation of the Corporate Securities Law may recover in an action for money had and received on the theory that the sale and the securities are void (*Pollak* v. *Staunton*, 210 Cal. 656, 662 [293 P. 26]; *Smith* v. *Bach*, 183 Cal. 259 [191 P. 14]), it is also the law that a person who sells a security impliedly represents that a permit therefor has been secured when one is required by law for such a sale, and if this implied representation is false, then it is a negligent misrepresentation which is an actionable fraud (*Mary Pickford Co.* v. *Bayly Bros., Inc.*, 12 Cal.2d 501, 525 [86 P.2d 102]); and where, as here, the action is for damages for fraud, recovery may be had against all persons participating in the fraud, whether they received a portion of the money paid or not (*Auslen* v. *Thompson*, 38 Cal.App.2d 204, 212, 213 [101 P.2d 136]).

█ Appellants attack the finding, made pursuant to the allegations of paragraph II of the second cause of action, that defendants knew that it was unlawful for the corporation to issue stock without the consent of the Commissioner of Corporations and conspired to violate the Corporate Securities Act, by pointing to the fact that a permit had been issued. This contention may not be upheld. There existed a permit authorizing sale and issuance of stock to named persons, the incorporators and promoters. There existed no permit to sell stock to anyone else, and there was an express prohibition in the permit granted against the sale of any interest in the stock issued to the incorporators or the receipt of any consideration therefor. Whether the transaction is called a sale in violation of the terms of the permit or a sale without a permit, the legal consequences are the same. (*Castle* v. *Acme Ice Cream Co.*, 101 Cal.App. 94 [281 P. 396]; *Live Oak Cemetery Assn.* v. *Adamson*, 106 Cal.App.Supp, 783 [288 P. 29].)

█ With reference to the contention that the plaintiffs were *in pari delicto* with defendants and therefore may not recover, the rule in this regard is that in actions such as the one with which we are here concerned ordinarily the purchaser of securities will not be held to be *in pari delicto,* because the Corporate Securities Law was enacted primarily for the protection of the investing public. ''When the action is between the purchaser and the corporation, the law attaches such great importance to the policy underlying the Blue Sky Law that the purchaser must be equally culpable

with the corporation before he will be held to be *in pari delicto."* (*Miller* v. *California Roofing Co.,* 55 Cal.App.2d 136, 144 [130 P.2d 740], and cases cited.) Even had the plaintiffs known that the consent of the Commissioner of Corporations would have to be secured before they could receive their stock, they could not be held to be equally culpable with the sellers, but aside from that, the trial court found, upon substantial evidence, that the defendants falsely represented that they had authority to sell the stock, and that plaintiffs relied upon such representation. ██ The purpose of the Corporate Securities Law being to protect the investing public, it is only in such extreme cases as are illustrated by *Miller* v. *California Roofing Co., supra,* where the purchaser actively participated in fraudulent representations to the Commissioner of Corporations, that recovery is denied.

██ No useful purpose would be served by further discussion of appellants' attacks upon the findings. Had appellants desired more detailed findings they could have proposed them to the trial court, but the record does not show that this was done; and further, it is apparent that had more detailed findings been made they would have been adverse to appellants and would not have supported a judgment in their favor. The record discloses no prejudicial error and no miscarriage of justice (Cal. Const., art. VI, § 4½).

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.