[Civ. No. 16502. First Dist., Div. One. Apr. 22, 1955.]

ELIZABETH H. OGIER, Appellant, v. PACIFIC OIL AND GAS DEVELOPMENT CORPORATION (a Corporation) et al., Respondents.

*Assigned by Chairman of Judicial Council.

Melbert B. Adams and Arthur Matin for Appellant.

Joseph A. Brown, Frank J. Baumgarten and George H. Sullivan for Respondents.

BRAY, J.—Plaintiff appeals from a judgment of dismissal upon sustaining without leave to amend defendants' demurrers to an amendment to an amended complaint and upon granting a motion to strike said amendment.

## Questions Presented

1. After the sustaining with leave to amend of demurrers to a complaint, is an amendment to that complaint a proper pleading?

2. Does the complaint as thus amended state causes of action?

3. Are the causes of action barred by the statute of limitations?

4. Laches.

## Record

Defendants demurred generally and specifically to the original complaint. Upon the sustaining of demurrers thereto plaintiff filed an amended complaint. Again demurrers thereto were sustained with leave to amend. Plaintiff then filed an "Amendment to Complaint." The court ordered the amendment stricken, the demurrers thereto sustained, and entered judgment of dismissal.

### 1. *Effect of Amendment.*

The original complaint and the amended complaint contained 25 causes of action. The amendment to the complaint recites that the amended complaint is amended: (1) by changing paragraph VIII in the first 12 causes of action to read as in the amendment set forth, so as to set forth facts purporting to avoid the application of the statute of limitations; and (2) by changing paragraph X of the next 12 causes of action for the same purpose.

The effect of this procedure was to adopt by reference the amended complaint changed as set forth in the amendment. It is elementary that a complaint may adopt by reference various writings. The amended complaint referred to is 24 transcript pages long. No particular point would be gained by rewriting that complaint. It was perfectly obvious to court and counsel what was before the court. We can see no reason why the complaint as thus amended did not constitute a proper pleading.

 In California it is fundamental that pleadings should be liberally construed in furtherance of justice in order that every case may be determined so far as possible on its real facts. To decline to permit the procedure followed here would be bowing to highly technical requirements to the exclusion of a consideration of the pleading as thus amended without any good reason for so doing. See *Big Boy Drilling Corp.* v. *Rankin,* 213 Cal. 646, 648 [3 P.2d 13]:

"The complaint, as originally filed, was not superseded by the amendment thereto, but was merely augmented or supplemented by the addition of allegations pertinent alone to the appellant's liability, and necessary to cause the complaint to conform to the proofs in this regard. It is not important that an amendment to the complaint was filed instead of an amended complaint." (See also *Maddux* v. *Mora,* 99 Cal. App. 695, 699 [279 P. 467].) And *Redington* v. *Cornwell,* 90 Cal. 49, 61 [27 P. 40]: "Unless otherwise required by the court, an amendment to a complaint, whether it consists of a mere additional averment, or effects a change in the original, may be filed by itself without being incorporated in the original by engrossment of the complaint as amended (Code Civ. Proc., § 432) . . ." While in these cases no demurrer had been sustained, the liberal attitude of the courts towards pleadings is indicated. In *Tidwell* v. *Henricks,* 124 Cal.App.2d 64 [268 P.2d 84], the default of the defendant was taken for failure to answer the complaint. Thereafter the plaintiff filed and served an amendment to the complaint and again took the default of the defendant for failing to answer. It was held that the filing of the amendment vacated the default to the original complaint and that the complaint as thus amended superseded the original complaint. The court then set aside the second default for failure of the plaintiff to serve the original complaint with the amendment. As we are not dealing here with default and no objection was made here to the failure to serve another copy of the original complaint, the latter portion of the court's decision in the Tidwell case is not applicable.

It is true that when a demurrer to a complaint is sustained, the complaint, except for purposes of review, is, in effect, destroyed as an existing pleading. However, that fact would not prevent its being incorporated by reference in the amendment. Cases cited by defendants like *Hendricks* v. *Osman,* 72 Cal.App.2d 465 [164 P.2d 545], and *Ross* v. *Goins,* 51 Cal.App. 412 [197 P. 132], dealing with the refusal of the plaintiff to amend after demurrer sustained, have no application here.

2. *Does the Complaint as Thus Amended State a Cause of Action?*

(a) Lack of Permit.

The first 12 counts allege the sale to plaintiff of oil properties in violation of the Corporate Securities Act because no

permit for the issuance of securities was obtained. Count 1 is typical of these counts.* It alleges that plaintiff is single, practically blind, aged 85, and because of age and infirmity likely to be deceived by designing persons; that at all times defendant A. F. Hilding was acting as the agent of all defendants, that defendants were engaged in the business of selling and issuing "certificates of interest in an oil title," within the meaning of the Corporate Securities Act and as specified; that on specified occasions defendant A. F. Hilding induced her to buy one of the said certificates of interest; that each defendant knew the land was in unproved territory and that plaintiff had neither money nor ability to prospect for oil; that it was the plan and scheme of defendants to induce plaintiff to part with her money upon her expectation that she would be able at some future time to lease her interest to defendant Pacific Oil and Gas Corporation or some oil company and thereby receive large and prospective oil royalties when oil was actually discovered on said land as the result of drilling thereon by either the defendant corporation or some other oil company. Plaintiff relied upon the representations. It is further alleged that defendants' scheme was to execute grant deeds to plaintiff purporting to convey title to prospective oil lands, or to an interest therein; that under the Corporate Securities Act a permit was required for the issuance of said securities and that defendants did not obtain such permit; that by making said sales defendants fraudulently represented that said sales were legal but in fact they were illegal and void; that a total failure of consideration resulted and plaintiff has been damaged in the amount paid. Plaintiff imposed full confidence in defendant Hilding and had no knowledge of the absence of said permit until on or about December 23, 1952. Plaintiff is uncertain whether she is entitled to recover against certain or all of the defendants, because all defendants were the grantors in the deeds at various times, and plaintiff is uncertain who was the real issuer of the securities and who ultimately received the consideration therefor. Plaintiff has no recollection of the exact amount she paid in each transaction but believes the amounts indicated by the revenue stamps on each deed are the true amounts. The property deeded her is described, the purchase price indicated by the

---

*The counts are practically identical with the exception of the names of the defendant or defendants to whom plaintiff paid her money, the time and amount of payment, and the particular property acquired.

stamps is $2,000, and the purchase date was January 2, 1941. A notice of rescission was served on all defendants June 23, 1953. The complaint further alleges that at the time of the transaction plaintiff was 75 years of age, had poor eyesight and a progressively declining physical condition, her faculties were impaired and she was easily influenced by defendant Hilding in whom she reposed great trust and confidence; that he deliberately sought her trust so that he could induce her to enter into the described transactions; that he always saw her alone; that she accepted his word for everything and that a confidential relationship existed between them until about November 15, 1952; that upon investigation by her attorney she became fully aware of the falsity of the representations about February 24, 1953, and that she refrained from filing suit until June 21, 1953, at the request of defendants' attorney.

The theory of the first 12 counts is that by failing to satisfy the requirements of the Corporate Securities Act defendants fraudulently transferred the "securities" (deeds) to plaintiff. Our first inquiry, then, is whether deeds to lands represented as oil bearing constitute a "certificate of interest" under Corporations Code, section 25008. ▆ Any such certificate issued without a permit is void under section 26100. A buyer of such a certificate may seek recovery of the purchase price paid either by way of rescission or an action for damages. (See *Auslen* v. *Thompson,* 38 Cal.App.2d 204, 213 [101 P.2d 136], and *Woods* v. *Deck,* 112 F.2d 739, 741.)

Section 25008 defines a "security" as "(a) Any stock, including treasury stock; any certificate of interest or participation; any certificate of interest in a profit-sharing agreement; *any certificate of interest in an oil, gas, or mining title or lease*; any transferable share, investment contract, or beneficial interest in title to property, profits, or earnings." (Emphasis added.) *Taormina* v. *Antelope Min. Corp.,* 110 Cal.App.2d 314, 320 [242 P.2d 665], states: ". . . it is also the law that a person who sells a security impliedly represents that a permit therefor has been secured when one is required by law for such a sale, and if this implied representation is false, then *it is a negligent misrepresentation which is an actionable fraud* [citation] ; and where, as here, the action is for damages for fraud, recovery may be had against all persons participating in the fraud, whether they received a portion of the money paid or not. [Citation.]" (Emphasis added.)

Ballantine, California Corporation Laws, 1949 ed. p. 608, states: "The term 'security' has been defined in the Act to cover practically every type of contract or transfer which the ingenuity of a promoter can conceive . . ."

In *Moore* v. *Stella*, 52 Cal.App.2d 766 [127 P.2d 300], the defendant transferred interest in mineral rights *by deed*. The interest ran to many acres of described land. ■ The court said (p. 776): "Deeds to interests in real property may be 'certificates of interest' and hence 'securities' althought the word 'deed' is not used in the definition." This answers defendants' contention that real property transferred in fee simple is not included in the section. The court added that the *size* of the area conveyed was not determinative, and stated this rule (p. 773): "Whether the transactions were clean-cut transfers of interests in real estate to be held, used, or sold by the grantees without participation with others in a profit-sharing venture on the one hand, or whether upon the other hand, while they were conveyances of definite interests in real property, they were intended by both seller and buyer to transfer rights to participate in earnings or profits in the nature of landowner's oil royalties that might inure to the benefit of numerous landowner lessors under community leases, *was necessarily a question of fact for the trial court.*" (Emphasis added.) The court then concluded that the evidence supported a "securities" finding.

In *People* v. *Chait*, 69 Cal.App.2d 503 [159 P.2d 445], the defendants sold to various individuals fractional lots upon the representation that they were "either proven oil lands, were located in a proven oil district, or that negotiations were then pending with major oil companies operating in the district, and that leases would be made with these companies by virtue of which the purchasers would receive large bonuses or royalties and a comfortable income." (Pp. 507-508.) Mr. Presiding Justice Nourse noted (pp. 520-521) that the lands were purchased as investments in "proven oil lands," ("potential oil lands" is the language used in our case) and the court held that evidence supported the finding that the transactions were within the purview of the Corporate Securities Act.

In *Domestic & Foreign Petroleum Co.* v. *Long,* 4 Cal. 2d 547 [51 P.2d 73], lessees under an oil and gas lease executed assignments of percentages of oil and other substances to be produced during the term of the lease, and money

derived therefrom. It was not contemplated that the lessees and assignees were to be tenants in common. The court held that such assignments were securities within the meaning of the act. In *People* v. *Daniels,* 25 Cal.App.2d 64 [76 P.2d 556], the defendant offered to sell units of land, the receipts for payment for which were called "grant deeds" purporting to convey an undivided 1/100 of ¼ of an acre per unit. The court held that a jury was warranted in finding the deeds came under the act. Although the court pointed out that the unit interest was so small as to exclude any possibility that the seller and the investor intended anything other than an interest in possible oil production, the court used this language applicable here (p. 69): ". . . what in fact is a grant deed . . . is also in substance and effect a 'certificate in an oil, gas or mining title' within the evident purpose, intent and meaning of the Corporate Securities Act."

"A deed to mineral rights may or may not be a security. The determination of its true character requires an inquiry which goes beyond the mere name of the instrument or the nature of the interest conveyed.

"In deciding whether a given instrument is a security the courts have invariably looked through mere form to substance. [Citations.]" (*Moore* v. *Stella, supra,* 52 Cal.App.2d 766, 772.)

One of the allegations of the complaint is that, in pursuance of the scheme to defraud plaintiff, defendants adopted the "device of executing grant deeds to plaintiff purporting to convey title to said prospective oil lands, or to a fractional undivided interest therein, but each such instrument was in fact a certificate of interest and a certificate of interest in an oil title." Under the allegations of the complaint, the triers of the fact could determine that the transactions were not clean-cut transfers of interests in real estate to be held, used or sold by plaintiff without participation with others in profit-sharing ventures but it was intended by both seller and buyer that, while they were conveyances of definite interests in real property, they actually were to transfer rights to participate in earnings or profits in the nature of landowners oil royalties that might inure to the benefit of others under leases. This seems to be the test laid down in *Moore* v. *Stella, supra,* 52 Cal.App.2d 766, 773. The first 12 counts state causes of action, at least as against the general demurrer filed.

(b) Fraud.

■ Counts 13 to 24, inclusive, allege fraud.* Most of the facts alleged in the first 12 counts are alleged in the fraud counts. Additionally it is alleged that defendant Hilding represented to plaintiff that the lands were potential oil lands, that defendant corporation was going to drill on the land, or that they would engage someone to drill for them; that other companies were going to drill on lands which were in the same oil trend and that this would make plaintiff's property valuable if oil were found. Defendants induced plaintiff to believe that such purchase was a good buy and worth the purchase price. Defending Hilding said: "There is a strong possibility of securing oil from this land. How much more money you will have if you put money in oil." Plaintiff, because of her faith and confidence in defendant Hilding, relied on these statements, all of which statements were known to be untrue, or were not warranted by information possessed by Hilding. The lands were not potential oil lands and were of little or no value. Plaintiff had no knowledge of the fraud until about December 23, 1952, and learned the true situation about February 24, 1953, from which date until June 21, 1953, she withheld action at the request of defendants' attorney.

The complaint as amended meets the test of the essential elements for a fraud action. Those elements are clearly stated in *Kauffman* v. *Bobo & Wood*, 99 Cal.App.2d 322, 326 [221 P.2d 750]: " 'The pleadings must, of course, show the fraudulent representations; that they were known by the defendant to be false or were made under circumstances not warranted by his knowledge; that they were actually false; that they were made with intent to deceive the plaintiff, or with intent to induce him to enter into the transaction; that the plaintiff relied upon the representations, believing them to be true; and that he was injured.' " (Quoting 12 Cal.Jur. 806. See Civ. Code, §§ 1710 and 1572.)

It is alleged that Hilding represented to plaintiff and induced her to believe that the lands were potential oil lands

---

*The 25th count alleges a common count for the sum of $71,500 (the total of moneys paid out by plaintiff on all the transactions mentioned in the previous 24 counts) money had and received. As we hold that the 24 other counts state causes of action, it is unnecessary to discuss the 25th count, as the common count cause of action would only fall in the event that the facts upon which the demand is based and which are specially pleaded in the other counts, failed to constitute causes of action. See *Rose* v. *Ames*, 53 Cal.App.2d 583, 589 [128 P.2d 65].

and that defendants or others would drill for oil, all of which allegations she alleged to be false, all of which allegations defendant Hilding, the agent of all defendants, knew to be false or made without information warranting his making them, and made with intent to induce plaintiff to enter into the transactions; that plaintiff believed the representations and relied on them and was injured to the extent of parting with the various sums for land of little or no value. ■ One misrepresentation justifiably relied on by the plaintiff is sufficient to establish fraud. (*Hefferan* v. *Freebairn*, 34 Cal. 2d 715, 721 [214 P.2d 386].)

■ Plaintiff alleged her advanced age, failing eyesight, impaired faculties, the close advisor-advisee relationship between herself and Hilding and her purchase of every security recommended to her by Hilding. The facts alleged, if proved, would constitute a confidential relationship. In *Kent* v. *First Trust & Sav. Bank*, 101 Cal.App.2d 361, 370 [225 P.2d 625], it is said: "There is no merit in plaintiff's contention that a confidential relationship was not pleaded . . . It is alleged in the answer that by reason of Mrs. McKee's age and physical condition her mental faculties were impaired and she was easily influenced by those in whom she had confidence; that she reposed trust and confidence in plaintiff and for a long period prior to and after the execution of the note she did whatever he suggested or instructed her to do."

Defendants cite the rule stated in 12 Cal.Jur. 452, and cases supporting it, to the effect that the representations to be actionable must be of a present or past fact and not a mere expression of opinion or a representation of an act to be performed in the future, and contend that the representations here are in the latter categories. However, the representations here were of present facts, namely, that the lands were potential oil lands, were a good buy and worth the price asked. ■ Moreover, there are two exceptions to the rule that expressions of opinion are not actionable and the allegations of the complaint bring the case within both exceptions. The first is that an expression of opinion is actionable if the party expressing it does not honestly entertain that opinion. (*Dyke* v. *Zaiser*, 80 Cal.App.2d 639, 649 [182 P.2d 344]; Restatement, Torts, 525 (b); *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 430 [159 P.2d 958].) Here it is alleged that defendant Hilding did not believe his representations to be true, thus making his opinion a dishonest one. ■ The second exception arises when the party making the false representation of

opinion has superior knowledge or special information. (*Union Flower Market, Ltd.* v. *Southern Calif. Flower Market, Inc.*, 10 Cal.2d 671, 676 [76 P.2d 503].) Plaintiff alleged that defendants were in the business of selling oil securities, while plaintiff was a lay person of advanced age relying on the representations. As said in *Reton* v. *J. D. Millar Realty Co.*, 132 Cal.App. 708, 711 [23 P.2d 419]: "It is true that a bare and naked statement as to value is ordinarily deemed the opinion of the party making the representation. [Citation.] On the other hand, such statement may be a positive affirmation of a fact, intended as such by the party making it, and reasonably regarded as such by the party to whom it is made. *When it is such, it is like any other representation of fact . . . .*" (Emphasis added; see also *Willson* v. *Municipal Bond Co.*, 7 Cal.2d 144, 150-151 [59 P.2d 974].)

3. *Statute of Limitations.*

 Plaintiff's allegations of the existence of the fiduciary relationship between her and Hilding, her age and condition and the other circumstances of the case, were sufficient to account for her failure to discover the true facts, until the dates alleged. Her causes of action did not accrue until the discovery of such facts. (Code Civ. Proc., § 338, subd. 4.) She alleged that because of some transaction she had with Hilding in October or November, 1952 (a transaction not here involved) she began to suspect that she had been imposed upon. She thereupon employed an attorney to investigate for her and upon his reporting to her the results of his investigation she first learned the true facts. This meets the requirements set forth in *Douglas* v. *Douglas*, 103 Cal. App.2d 29, 32 [228 P.2d 603]. "Where the fraudulent acts complained of occurred more than three years prior to the filing of the action, to constitute a valid complaint not only must the facts constituting the fraud be declared but also the circumstances surrounding the discovery must be so alleged as to disclose that the action is not barred by the statute of limitations. [Citations.]" See also *Strangman* v. *Arc-Saws, Inc.*, 123 Cal.App.2d 620 [267 P.2d 395], an action based on the Corporate Securities Act, where it was held that the plaintiff's failure to make inquiry sooner was justified because of the confidence imposed by him in his attorney who was also an officer of the issuing corporation. See *Myers* v. *Stevenson*, 125 Cal.App.2d 399, 402 [270 P.2d 885], giving right to amend if allegations concerning the ignorance of the cause of action and its discovery are not sufficiently explicit.

### 4. *Laches.*

What has been said about plaintiff's failure to discover the facts earlier applies to the claim of laches. From the time plaintiff first became suspicious until the discovery of the facts, not more than two months elapsed. Thereafter for a period of approximately four months she withheld action at the request of defendants' attorney. ▇ " 'Where a party protests promptly on discovering that he has been defrauded in making a contract, and enters into negotiations for a peaceable settlement, which fail, a complaint filed within a reasonable time after such failure is not barred by laches.' (*Reiniger* v. *Hassell*, 216 Cal. 209, 210-211 [13 P.2d 737].) " (*Williams* v. *Marshall*, 37 Cal.2d 445, 456 [235 P.2d 372].) No element of laches appears. ▇ It should be pointed out, also, that ". . . the defense of laches can be asserted only in an action in equity." (18 Cal.Jur.2d 206.) Plaintiff's action sounds in tort for fraud. (See *Taormina* v. *Antelope Min. Corp., supra,* 110 Cal.App.2d 314, 319.)

The orders granting the motion to strike and sustaining the demurrers were erroneous. The judgment is reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied May 20, 1955, and respondents' petition for a hearing by the Supreme Court was denied June 16, 1955. Schauer, J., and Spence, J., were of the opinion that the petition should be granted.