Filed 6/28/24  Gutierrez v. Gutierrez CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ESPERANZA H. GUTIERREZ, | |
| Plaintiff and Respondent, | G062328 |
| v. | (Super. Ct. No. 30-2019-01094446) |
| LUIS H. GUTIERREZ et al., | |
| Defendants and Appellants. | O P I N I O N |

\*          \*          \*

Appeal from a judgment of the Superior Court of Orange County, Ronald L. Bauer, Judge.  (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Law Offices of Thomas P. Aplin, Thomas P. Aplin for Defendants and Appellants.

Ogburn Law Office and Keith Ogburn; McGonigle & Hunsaker and Christina McGonigle for Plaintiff and Respondent.

\*          \*          \*

Defendants Luis H. Gutierrez and Daniel H. Gutierrez appeal from a judgment in favor of plaintiff Esperanza H. Gutierrez, their mother.[1] Esperanza sued her sons for breach of fiduciary duty, financial elder abuse, and other relief. The underlying action primarily concerned two sets of bank accounts—one set of accounts jointly held by Luis and his deceased father (also Esperanza's deceased husband); and one set of accounts jointly held by Daniel and Esperanza. Luis and Daniel controlled the money in those accounts for Esperanza's benefit and withdrew money from the accounts from 2012 to 2017. In 2017, Esperanza's daughter (Luis and Daniel's sister), Maria Antonieta Amparan (Toni), moved in with Esperanza. Esperanza thereafter initiated the underlying action, alleging Luis and Daniel misappropriated her funds for their own use.

After a bench trial, the court held Luis and Daniel were liable for financial elder abuse and breach of fiduciary duty. The court accordingly ordered Luis to hold $38,554 in a constructive trust for Esperanza and ordered Daniel to hold $45,850 in a constructive trust for Esperanza.

On appeal, Luis and Daniel raise several arguments. First, they contend the court erred by placing the burden on them to prove the disputed transactions were fair and reasonable to Esperanza. Second, they argue the court provided no support for the damages it awarded. Third, they claim Esperanza did not have standing to file the underlying action. Fourth, they argue the court erred by not finding Esperanza's claims were barred by the statute of limitations or by laches.

---

[1] Because the relevant parties to this appeal share the same last name, we refer to them by first name to avoid confusion. No disrespect is intended.

We disagree with Luis and Daniel's contentions. The trial court properly shifted the burden of proof to Luis and Daniel to explain their withdrawal of funds from accounts they controlled for Esperanza. There also is no basis to reverse due to any lack of standing. Esperanza had standing to assert her claims. We further find the court explained the damages awarded and did not err by finding Esperanza's claims were not time barred. Finally, Esperanza's claim for financial elder abuse was an action at law so laches does not apply. To the extent her other claims were equitable in nature, she did not unreasonably delay in filing suit. We accordingly affirm the judgment.

FACTS

*The Trust and Bank Accounts*

In 2007, Esperanza and her husband, Luis S. Gutierrez, established a revocable trust (the Trust) and named themselves as cotrustees. Section 7.4 provided that Luis would be the successor trustee "[u]pon the death of [his father], and in the event that Esperanza . . . is deceased." Toni would be the successor trustee "[u]pon the death of [Esperanza], and in the event that [Luis] is deceased." Luis and Toni would serve as cotrustees "[i]n the event that [their father] and Esperanza . . . die, or become incapacitated simultaneously."

The Trust also noted Esperanza and her husband had five children, two of whom are involved in the underlying action (Luis and Daniel). The children were listed as beneficiaries who would each receive a one-fifth share of the Trust assets after Esperanza and her husband both passed away.

3

The Trust assets generally consisted of real property, bank accounts, personal property, and "property not specifically identified." The latter was defined as follows: "Any and all real and personal property not specifically set forth herein that is in the name of the Settlor, or belonging to the Settlor as of the time of the execution of this agreement or acquired by the Trust, or Settlors, up to the time of the distribution shall hereby be deemed to be part of this Trust Estate and shall be distributed according to the term of" the Trust.

At some point, the Trust was amended, and section 7.4 was revised to remove Toni as the successor trustee or cotrustee and to substitute Daniel into those roles.

In February 2012, Esperanza's husband passed away, and Esperanza became the sole acting successor trustee pursuant to the Trust's terms. From 2012 to 2017, Luis and Daniel withdrew money from certain bank accounts, which is central to the instant appeal. Luis and his father managed two of the relevant bank accounts at Bank of America, and Luis continued to manage those accounts after his father passed away. Daniel and Esperanza likewise held three joint accounts at Bank of America.

*Esperanza's Petition*

In 2019, Esperanza initiated the underlying action in probate court. In 2021, she filed the operative first amended petition (FAP) alleging she was the sole lifetime beneficiary of the Trust since her husband passed away and Luis assumed the role of sole successor trustee pursuant to section 7.4 of the Trust. The FAP also alleged Luis "delegated Trustee fiduciary

4

duties" to Daniel "when he authorized [Daniel] to take Trust assets and open joint accounts with [Esperanza]."[2]

According to the FAP, Luis and Daniel misappropriated Trust funds from various bank accounts in violation of their fiduciary duties to Esperanza, their 87-year-old mother who spoke Spanish and had limited English language skills. They allegedly "procured large cash gifts in excess of $93,083.07 by means of fraud and undue influence and [in] breach of their fiduciary duties [to Esperanza]" since the death of their father. The FAP specifically identified a Bank of America account held by Esperanza's husband containing $119,000 in community property funds when he passed away. The FAP alleged Luis only gave $11,772.07 of the $119,000 to Esperanza in 2017 after she had made repeated requests about the status of the Trust estate. The FAP further alleged Luis induced Esperanza to open new bank accounts and assured her the accounts were necessary for managing the estate when they were actually under Luis's sole management and control.

Daniel also allegedly facilitated the Trust amendment removing Toni as successor trustee and cotrustee for his own benefit. Because Esperanza spoke Spanish and had "very limited English reading comprehension skills," she did not understand what she was signing.

Based on the above allegations, the FAP alleged causes of action against Luis and Daniel for breach of fiduciary duty and financial elder abuse. The FAP also sought to obtain an accounting of all funds withdrawn

---

[2] The allegation that Luis and Daniel served as successor trustees appears to be incorrect. In a joint trial statement, the parties later agreed Esperanza was the surviving successor trustee after her husband passed away.

from the Trust since February 2012. Assuming Luis and Daniel were not deemed to be successor trustees, the FAP alternatively requested the court void any nonprobate transfers of community property from Esperanza's deceased husband to Luis and Daniel and to impose a constructive trust.

*Trial*

In a joint trial statement, the parties agreed Esperanza (not Luis or Daniel) served as the successor trustee pursuant to the Trust's terms. They also agreed Luis withdrew funds from various bank accounts from 2012 to 2017 but disagreed as to whether the money in those accounts belonged to Esperanza. The parties further agreed Daniel and Esperanza jointly held other bank accounts from 2008 to 2017. They generally disagreed as to whether Esperanza authorized her sons to withdraw any funds from the various accounts.

The case proceeded to a bench trial in 2022. According to Luis's testimony, he and his father jointly held bank accounts containing his father's money. They held one of the accounts since 1983, and Luis's father asked Luis to be on the account because his father had limited English skills. But his father had "full control of the money at all times." Although Luis claimed the money in the joint accounts belonged to him after his father passed away, he also testified the money belonged to Esperanza and that Esperanza asked him to manage the money for her. When asked why he believed the money belonged to Esperanza, he said his father had asked him "to keep a roof over her head, [and] for all the bills to be paid." He explained the money "was not supposed to be used for anything else . . . ."

6

Luis also testified that he managed the money for Esperanza after his father passed away and that she had a grade-school education with limited English skills. When asked about specific transactions, he could not recall why he withdrew money on various occasions. But he generally claimed to have used the money for Esperanza's household expenses and testified he told Esperanza about his withdrawals. He also testified Esperanza never questioned any of the transactions until 2019 when she filed the underlying action.

Daniel likewise testified he and Esperanza jointly held other bank accounts together, and Esperanza asked Daniel to help manage her money in those accounts. According to Daniel, Esperanza had limited English skills, could not manage her money, and could not understand bank statements.

Esperanza testified she and her husband never held any bank accounts together, but she held joint bank accounts with Daniel. She did not have access to her husband's money when he passed away because Luis and Daniel had control of the money. She received bank statements in the mail but did not know which accounts they were for and would sometimes ask Daniel to explain them to her. She would ask why money was spent on certain things and requested receipts, but she "never had an answer" and never received any receipts. She also asked how much money was in the various bank accounts, but "they would not tell" her. She further testified Luis and Daniel paid her household bills after her husband passed away, but Luis would not give her "a dollar so [she could] buy milk or bread." She believed her sons paid the bills from her deceased husband's money, but other times she testified she did not know where the money came from. Among other things, she testified she asked Luis for money to travel and visit

Toni on a few occasions, and she believed Luis paid for those trips from her deceased husband's accounts.  In 2017, Toni moved in with her, and she then used Toni rather than her sons to manage the various bank accounts.

*Statement of Decision and Judgment*

The trial court announced its decision in an August 2022 minute order and found in favor of Esperanza.  Among other things, the court found Luis was liable for $23,454 in unauthorized withdrawals and expenditures while Daniel was liable for $43,850 in unauthorized withdrawals and expenditures.

Luis and Daniel requested a statement of decision (SOD), and the court directed Esperanza's counsel to prepare a proposed SOD.  Esperanza's counsel requested additional content for the SOD, Luis and Daniel objected to her request, and Esperanza subsequently prepared a proposed SOD to which Luis and Daniel also filed objections.  The court signed the SOD in September 2022 and found Esperanza had prevailed on her claims for financial elder abuse, breach of fiduciary duty, and constructive trust.  First, the court held the money in the joint accounts held by Luis and his deceased father and in the joint accounts held by Daniel and Esperanza all belonged to Esperanza.

Second, the court found there was a confidential relationship between Esperanza and each of her sons.  In reaching this conclusion, the court emphasized Luis and Daniel controlled Esperanza's money, she "reposed trust and confidence" in each of them, and they purported to act or advise her by handling money on her behalf from February 2012 to 2017.  Likewise, the court held Luis and Daniel owed fiduciary duties to Esperanza.  The court then relied on case law suggesting "[t]he law presumes that any transaction between the victim and the trusted person was fraudulent or the

8

product of undue influence . . . ." The court concluded the presumption of fraud shifted the burden to Luis and Daniel to prove the disputed transactions were fair and reasonable to Esperanza.

Third, the court identified 58 disputed transactions and held Luis and Daniel failed to meet their burden of proving "full disclosure and honest dealing" with respect to some of those transactions. The court noted their evidence was "a jumble of inconsistencies" and their testimony that Esperanza approved their use of her funds was "exaggerated and untruthful." As an example, the court indicated some withdrawals were allegedly authorized by Esperanza when she was in another state and did not approve them.

Fourth, the court generally found Esperanza, who was 90 years old in 2022, to be vulnerable to undue influence because she had "limited abilities," did not speak English well, could not read in English, had a sixth-grade education, and previously relied on her husband to handle all the bills and banking.

Finally, the SOD addressed various requests for clarification from Luis and Daniel. Among other things, the court explained why Esperanza had standing to bring her claims. The court noted Luis and Daniel incorrectly argued the Trust was the petitioner in the case when Esperanza had sued her sons in her individual capacity. The court also held Esperanza had standing to sue in probate as a beneficiary of the Trust.

In December 2022, the court entered judgment in Esperanza's favor and ordered Luis to hold $38,554 in a constructive trust for Esperanza and Daniel to hold $45,850 in a constructive trust for Esperanza.

9

## DISCUSSION

Luis and Daniel contend the court erred by shifting the burden of proof to them to prove the validity of the various transactions. They also argue the court arbitrarily increased the amounts awarded in the judgment without any explanation. They further claim Esperanza lacked standing to file the underlying action and the court should have found her claims were barred by the statute of limitations or by laches. We disagree with these contentions.

### *Standard of Review*

"On appeal from a judgment based on a statement of decision after a bench trial, we review the trial court's conclusions of law de novo and its findings of fact for substantial evidence." (*McPherson v. EF Intercultural Foundation, Inc.* (2020) 47 Cal.App.5th 243, 257.)

### *Burden of Proof*

As noted *ante,* the court held Luis and Daniel had a confidential relationship with Esperanza or owed fiduciary duties to her so "the [p]resumption of [f]raud shifted the burden to [them] to prove" the 58 disputed transactions "were fair and in all respects reasonable . . . ." The court concluded Luis and Daniel failed to meet their burden due to inconsistencies in the evidence.

Luis and Daniel contend the court erred by placing the burden of proof on them rather than Esperanza. Relying on Evidence Code section 500, they argue Esperanza had the burden of proving they misappropriated any money, and they should not have been expected to recall specific bank transactions from years ago. They claim Esperanza failed to meet her burden

10

because she did not present any evidence of misappropriation and her entire case was built on the false assumptions of her daughter, Toni. The court did not err by shifting the burden of proof to Luis and Daniel to explain their withdrawal of funds from accounts they controlled for Esperanza.

A party typically "has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he [or she] is asserting." (Evid. Code, § 500.) This rule applies "[e]xcept as otherwise provided by law." (*Ibid.*) "'[C]ourts may alter the normal allocation of the burden of proof' based on considerations of fairness and policy." (*In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1267.) Indeed, courts have shifted the burden of proof in cases where it is impossible for a plaintiff to prove his or her case. (*Ibid.*) These cases "recognize that '"determining the incidence of the burden of proof . . . '. . . is merely a question of policy and fairness . . . ."'" (*Id.* at p. 1268, italics omitted.)

To determine if the burden of proof should be altered, courts consider the following factors: "'"the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the fact."'" (*In re Marriage of Prentis-Margulis & Margulis, supra,* 198 Cal.App.4th at p. 1268.)

Here, the court did not err by shifting the burden of proof. Luis and Daniel admit they controlled and administered the bank accounts for Esperanza's benefit and withdrew funds for Esperanza's expenses. They accordingly had a fiduciary responsibility, in some respect, to Esperanza. While they argue the bank statements for Esperanza's joint accounts with

11

Daniel were mailed directly to her and Daniel reviewed the statements with her, Daniel testified Esperanza did not understand bank statements, and it is disputed whether Daniel explained the statements to his mother.  Esperanza testified she asked Daniel questions about the bank statements or requested receipts but never received an answer or any receipts.  Luis and Daniel also admit Esperanza was older, had limited education, and could not read or write in English.

Compared to Esperanza, Luis and Daniel had greater knowledge and access to evidence concerning the transactions they made and funds they withdrew from the accounts.  Applying the general burden of proof rule under these circumstances goes against "'[f]undamental fairness,'" which is "'the lodestar for our analysis.'" (*In re Marriage of Prentis-Margulis & Margulis*, *supra*, 198 Cal.App.4th at p. 1268.)  "'"Where the evidence necessary to establish a fact essential to a claim lies peculiarly within the knowledge and competence of one of the parties, that party has the burden of going forward with the evidence on the issue although it is not the party asserting the claim."'" (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1189.) The court accordingly did not err by placing the burden of proof on Luis and Daniel to defend their transactions.

*Damages Calculation*

Relying on the trial court's minute order, Luis and Daniel next argue the court provided no support for its damages calculation and arbitrarily increased the amounts awarded in the judgment without any explanation.  They appear to overlook the SOD.  In the SOD, the court listed 58 disputed transactions and excluded some of those transactions from

12

Esperanza's recovery.[3]  In other words, the court found Luis and Daniel were not liable for some of the transactions.  As to Luis, the court excluded $17,650 from Esperanza's recovery as follows:  (1) $10,900 for payments made for a property at Puerto Penasco; (2) $3,050 for home repair and security made for Esperanza's benefit; and (3) $3,700 for a "tomb."  The court calculated Luis's liability by deducting $17,650 from the $56,204 Esperanza had requested, resulting in an award of $38,554.  As to Daniel, the court excluded $16,173.79 for a "bonus."  The court accordingly calculated Daniel's liability by deducting $16,173.79 from the $62,023.79 Esperanza had requested, resulting in an award of $45,850.  The awarded amounts ($38,554 and $45,850) are the same in the SOD and judgment.

To the extent Luis and Daniel contend the court ignored their explanations or that their explanations were more reliable than Esperanza's testimony, these were factual issues for the trial court to determine on conflicting evidence.  We will not reweigh the evidence and redetermine issues of credibility.  (*McPherson v. EF Intercultural Foundation, Inc.*, *supra*, 47 Cal.App.5th at p. 257.)

*Esperanza's Standing*

Relying on Probate Code section 15642, Luis and Daniel further contend Esperanza lacked capacity to act as trustee and therefore did not have standing to file the underlying action.  They contend Esperanza lacked standing to sue in any capacity (as trustor or as a beneficiary) because the Trust was invalid after their father passed away in 2012.  They claim "[t]his

_____

[3] While the SOD mentions 58 transactions, Luis's opening brief focuses on 36 transactions to which the parties stipulated in their joint trial statement.

13

was proven because the evidence at trial established . . . Esperanza was an incompetent successor trustee . . . ." They note Esperanza testified she did not even know she became the successor trustee upon her husband's death and mistakenly believed she became the sole beneficiary. We are not persuaded by these arguments.

Probate Code section 15642, which Luis and Daniel cite, has nothing to do with standing. Instead, it deals exclusively with the removal of a trustee. The statute states in pertinent part that a trustee may be removed under limited circumstances by a court on its own motion or by a settlor, cotrustee, or beneficiary who has filed a petition. (*Id*., subds. (a), (b).) Luis and Daniel do not claim they tried to remove Esperanza as trustee, and Esperanza did not sue on the Trust's behalf. Instead, she sued her sons as an individual who was trustor and trust beneficiary. The FAP states: "Petitioner, Trustor and Trust Beneficiary Esperanza H. Gutierrez ('Petitioner') was and is an 87 year old adult resident of Orange County, California." Her capacity to serve as a trustee is therefore irrelevant to her standing.

Luis and Daniel likewise suggest Esperanza lacked standing because the Trust was revoked and replaced in 2017, two years before she filed the underlying action in 2019. This argument is equally without merit as they appear to mistakenly believe Esperanza filed the action on behalf of the Trust. They also cite no law suggesting the Trust's revocation affected Esperanza's claims, which were mostly based on transactions occurring before the Trust was revoked.[4]

---

[4] Luis and Daniel do not specify when the Trust was revoked in 2017. In any event, most of the disputed transactions occurred before 2017.

14

Finally, Luis claims the bank accounts he managed were not Trust assets. Instead, he argues he and his father jointly held the accounts in both of their names. He concludes that "[t]he money in these accounts, by law, became his money, not the Trust's" and he could not be liable for misappropriating his own money. The trial court's SOD does not address this issue. To avoid an implied finding on appeal, Luis was required to bring this omission to the court's attention, which he did not do. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

Here, the evidence supports the court's implied finding that the money in the bank accounts was community property that passed to Esperanza once her husband passed away. There was evidence Esperanza's husband opened the accounts when he was married to Esperanza and the accounts contained his money, not Luis's money. There also is no evidence suggesting the parties had a premarital agreement affecting the nature of any community property. Thus, it is no surprise Luis concedes he managed the funds "as if they were for the benefit [of] his mother" after his father passed away and relinquished management of the accounts to Esperanza in 2017. He likewise testified he considered the money to belong to Esperanza. Luis's contention that Esperanza and her husband maintained separate bank accounts and treated them as separate property misses the point. Community property funds do not become separate property just because they are deposited into separate accounts absent a premarital agreement, which the parties did not appear to have. (Fam. Code, § 760 ["Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property"].)

*Statute of Limitations*

Luis and Daniel next argue the court erred by not finding Esperanza's claims were barred by the relevant statute of limitations. They contend the longest applicable statute of limitations is four years and "all causes of action arising one month before September 4, 2015 are barred because that date is four years before the Petition was filed [on September 4, 2019]." They contend all of the claims against Daniel are time-barred because those claims concerned transactions before 2014. They also suggest Esperanza had inquiry notice because there was evidence she received bank statements for the accounts she held with Daniel and he reviewed the statements with her. Regarding Luis, they claim the parties stipulated to 36 transactions from 2012 to 2017 in their joint trial statement and only four to 10 of those are not time-barred. Finally, they argue the trial court never addressed the statute of limitations issue. We disagree.

The statute of limitations for financial elder abuse is four years. (Welf. & Inst. Code, § 15657.7.) The statute of limitations for breach of fiduciary duty is three years if the gravamen of the claim is fraud; otherwise it is four years. (*Thomson v. Canyon* (2011) 198 Cal.App.4th 594, 606; Code Civ. Proc., § 343.)

The statute of limitations on a financial elder abuse cause of action runs from the time "the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered, the facts constituting the financial abuse." (Welf. & Inst. Code, § 15657.7.) Likewise, "in cases involving . . . a [fiduciary] relationship facts which would ordinarily require investigation may not excite suspicion, and . . . the same degree of diligence is not required." (*Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 440.) Indeed, courts have held "the trust relationship [between fiduciaries] limits

16

the duty of inquiry." (*Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93, 102.) "Where the facts adequately allege breach of fiduciary duty or undue influence, the courts will allow a date-of-discovery rule to be applied, "'when strict adherence to the date of injury rule would result in unfairness to the plaintiff and would encourage wrongdoers to mislead their fiduciary to delay bringing suit. It is particularly appropriate when the defendant maintains custody and control of a plaintiff's property or interests.'"" (*Estate of Young* (2008) 160 Cal.App.4th 62, 77; see *WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 157.) Finally, "[r]esolution of a statute of limitations issue is normally a question of fact" to which we apply the substantial evidence standard of review. (*Pearce v. Briggs* (2021) 68 Cal.App.5th 466, 474.)

Here, contrary to Luis's and Daniel's contention, the trial court did address the statute of limitations. In the SOD, the court held the statute of limitations on the financial elder abuse and breach of fiduciary duty claims did not begin to run until 2017 when Esperanza had reason to discover the abuse and learned of the damages she had sustained. The court found Esperanza did not know her sons had wrongfully taken her money until after January 2017 when Toni started to ask questions about the money in the accounts. To the extent Luis and Daniel challenge this finding, it is supported by substantial evidence—namely, Toni's testimony that she moved in with Esperanza in 2017 and found her bank statements, some of which were never opened. Toni testified she discussed the statements with Esperanza and started to question her brothers. Luis similarly testified Esperanza started to question the transactions in 2017 or later when she filed the underlying action. All of this occurred around the time Esperanza used Toni to help her with her bank accounts. In other words, it appears

17

Esperanza ended the fiduciary relationship with her sons in 2017. "'As a general rule, the statute of limitations does not run where the parties occupy a fiduciary relationship toward each other and the relationship has not been repudiated or terminated by the parties.'" (*Morris v. Berman* (1958) 159 Cal.App.2d 770, 794-795.)

There also was undisputed evidence of Esperanza being around 80 to 85 years old at the time of the disputed transactions, she could not read in English, had a grade school education, and she trusted her sons to manage her money in the accounts. While Luis and Daniel emphasize she received bank statements for the accounts she held with Daniel, she could not read in English, Daniel testified she could not understand bank statements, and she relied on him to explain the statements. It also is not clear if Daniel explained all of the transactions to her. Esperanza's testimony suggested Daniel did not explain why money was spent on certain things and did not provide receipts when she requested them. To the extent Daniel points to other testimony that he did explain all of the transactions, we may not reweigh the evidence and are bound by the court's credibility determinations. In short, Esperanza's "age and condition and the other circumstances of the case, were sufficient to account for her failure to discover the true facts, until the dates alleged." (*Ogier v. Pacific Oil & Gas Etc. Corp.* (1955) 132 Cal.App.2d 496, 507.)

*Laches*

Finally, Luis and Daniel contend the court erred by not applying the doctrine of laches because it was inequitable to require them to recall transactions from four to nine years prior to trial. There is no basis to reverse on the ground of laches.

18

"Laches is 'a failure on the part of a plaintiff to assert his rights in a timely fashion accompanied by a period of delay with consequent results prejudicial to the defendant.'" (*Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.* (2020) 56 Cal.App.5th 894, 913.) "[D]elay is measured from the time the plaintiff knew (or should have known) about the alleged claim." (*Drake v. Pinkham* (2013) 217 Cal.App.4th 400, 406.) We review the court's ruling on laches for abuse of discretion. (*Straley v. Gamble* (2013) 217 Cal.App.4th 533, 537.)

Here, we first address Luis's and Daniel's claim that the trial court did not address laches. Because they did not ask the court to address laches in the SOD, they forfeited any argument that the SOD was deficient. (Code Civ. Proc., § 634; *In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at pp. 1133-1134.) Turning to the merits of their argument, the doctrine of laches does not apply to Esperanza's claim for financial elder abuse because it is an action at law and laches bars relief in actions in equity. (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1417.) To the extent Esperanza's other claims were equitable in nature, she did not unreasonably delay in filing suit because, as discussed *ante*, she did not have reason to discover her sons' actions until 2017.

## DISPOSITION

The judgment is affirmed.  Esperanza is entitled to costs incurred on appeal.


SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


DELANEY, J.